# United States Court of Appeals
## For the First Circuit

No. 07-2187

BAGH SINGH,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Ashwani K. Bhakhri for petitioner.
Jeffrey S. Bucholtz, Acting Assistant Attorney General, Terri
J. Scadron, Assistant Director, Office of Immigration Litigation,
and Margaret Perry, Senior Litigation Counsel, Office of
Immigration Litigation, for respondent.

September 25, 2008

**LIPEZ, Circuit Judge**.  Petitioner Bagh Singh, a native and citizen of India, seeks review of a decision of the Board of Immigration Appeals (BIA) denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  Singh claims that he experienced persecution in India because of his father's political beliefs.  The BIA rejected this contention and concluded that petitioner had failed to show that any of the statutory bases for obtaining relief from deportation was the "central reason" for his alleged persecution.  Singh challenges that conclusion, as well as the BIA's finding that he failed to corroborate his testimony, as required by the Real ID Act of 2005, Div. B. of Pub. L. No. 109-13, 119 Stat. 302-23 (2005).

We do not reach the corroboration issue.  Discerning no error in the BIA's analysis of the alleged basis for persecution, we deny the petition.

**I.**

On March 25, 2006, petitioner Singh attempted to enter the United States as a stowaway on a boat arriving in San Juan, Puerto Rico.  He was immediately apprehended and charged with multiple offenses that subjected him to removal from the country.  See 8 U.S.C. § 1182(a)(6)(D) (stowaway); § 1182(a)(9)(A)(ii)(I) (alien ordered removed who seeks admission within 10 years of date of departure or removal); 8 U.S.C. § 1182(a)(9)(C)(i)(II) (alien

-2-

who has attempted to enter or reenter without being admitted). Singh conceded deportability, but filed applications for relief based on alleged persecution against his family in India.

In a hearing before an Immigration Judge (IJ), Singh testified that his family, who lived in the Punjab region of India, had been repeatedly targeted for harassment and violence because of his father's political activity. His father, Rachhpal Singh (Rachhpal), was an active member of the Akali Dal, a political separatist group that clashed with the rival organization Babbar Khalsa, a militant group of Sikh separatists. Petitioner testified that his father's opposition to these rivals was vocal and open, triggering the harassment his family endured. Their difficulties began in the early 1990s, when members of the Babbar Khalsa showed up at petitioner's home on several occasions and demanded food from his mother. Singh testified that Rachhpal reported these visits to the police but nothing was ever done. In January of 1995, two members of the Babbar Khalsa entered Singh's home and shot his father. Singh and his cousin, who were standing near his father at the time of the attack, also suffered gunshot wounds. All three men were hospitalized for their injuries.

Singh, who worked on his family's farm, testified that he believed his father had been targeted by the Babbar Khalsa because he had reported their previous harassment to the police. His father recognized the two shooters, who later called Singh's house

-3-

and explicitly identified themselves as members of the Babbar Khalsa. There is some confusion about whether Singh himself knew the identity of the men; he first testified that he had never seen them before, but later stated that they were the ones who had come to his house and harassed his family in previous years.

Singh testified that he left India soon after the shooting at the urging of his parents, who were concerned for his safety. He then made his first attempt to enter the United States. In July 1995, he crossed into Texas from Mexico, but was quickly stopped by immigration authorities. He was detained for one night and released on bail.

Singh was placed in deportation proceedings, but they were never completed because he voluntarily left the United States a month later. His father had died as a result of complications from his bullet wounds, and Singh returned to India to console his distraught mother. After his departure from the United States, an in absentia deportation order was entered against him.

Shortly after his return to India, Singh's mother also died, and he remained in India to farm the land he had inherited. He claims that during the next six years, members of the Babbar Khalsa repeatedly made threatening calls to him, claiming to be the true heirs of his 120 acres of land. Singh complained to the police, but there was no response. Singh testified that he did not change his phone number because he believed that the harassers

would be undeterred and that the calls would continue after they inevitably obtained his new number.

In 2002, Singh was returning to his home when he was attacked by Babbar Khalsa members, including his neighbor, Jasbeet Singh (Jasbeet). Petitioner testified that Jasbeet encouraged the attackers to kill him, so that "everything would be ours, his home, his property." Singh suffered a head injury during the assault, was briefly unconscious, and was taken to the hospital by another neighbor. He explained that he had no documentary evidence of his medical treatment because the doctor was "afraid of sending anything to America."

Two years after this attack, Singh again decided to leave India. He had no remaining family in the country and was afraid of further physical harassment by the Babbar Khalsa. He sold a portion of his property to pay the smuggler's fees, and traveled to the United States by way of Moscow, Cuba, and Venezuela. From this last stop, he took a boat to Puerto Rico, where he was immediately detained.

On January 5, 2006, Singh appeared with counsel at the hearing before the IJ, where he recounted the history described above. Four days later, the IJ denied Singh's applications for asylum, withholding of removal, and protection under the CAT. The IJ found that Singh's credibility was questionable, that his testimony was weak and uncorroborated, and that he had not properly

demonstrated that the persecution he claimed was on account of any of the statutory grounds for seeking asylum or other relief from deportation. On May 9, 2006, the BIA affirmed. In response to a motion from the government, we vacated the Board's order of removal and remanded the case to the BIA to address the effects on petitioner's application of the REAL ID Act of 2005, which amended various provisions of the Immigration and Nationality Act (INA) applicable to asylum seekers. See Div. B. of Pub. L. No. 109-13, 119 Stat. 302-23 (2005).[1]

On remand, the BIA again affirmed the IJ's denial of petitioner's application. The BIA held that Singh had failed to establish past persecution or a well-founded fear of future persecution on account of one of the five grounds enumerated in the statute. See 8 U.S.C. § 1101(a)(42)(A) (identifying the five grounds as race, religion, nationality, membership in a particular social group, and political opinion). Specifically, the Board found that Singh's injuries in the 1995 shooting were "only coincidental" to the shooting of his father and that the 2002 attack on Singh was only for economic reasons. It therefore concluded that Singh was ineligible for asylum, withholding of removal, or CAT protection. This petition for review followed.

---

[1] The REAL ID Act of 2005 applies to all applications that, like Singh's, were filed on or after May 11, 2005. In re S-B-, 24 I & N Dec. 42, 43 (BIA 2006); see also Sompotan v. Mukasey, 533 F.3d 63, 69 n.3 (1st Cir. 2008).

-6-

A. **Standard of Review**

When the BIA both adopts the decision of an immigration judge and adds a new ground for upholding the result, "this court reviews the IJ's decision as though it were the BIA's to the extent of the adoption, and the BIA's decision as to the additional ground." Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006). Whether the harm suffered by an asylum applicant was inflicted "on account of" a protected ground is "generally [a] question[] of fact." Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008). We review factual findings underlying the denial of asylum using the deferential substantial evidence standard, Sunoto v. Gonzales, 504 F.3d 56, 60 (1st Cir. 2007), and we must "uphold the BIA's decision 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006)(quoting 8 U.S.C. § 1252(b)(4)(B)).

B. **Eligibility for Asylum**

To establish eligibility for asylum, an alien must show that he is unwilling or unable to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).[2]

---

[2] While the IJ expressly ruled that the discrimination Singh described was not sufficiently severe to constitute past persecution or provide a basis for a well-founded fear of future persecution, we, like the BIA, do not reach the issue. As we shall

The REAL ID Act added two important elements to the alien's burden of proof.

First, under the REAL ID amendments, the alien must show that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least <u>one</u> <u>central</u> <u>reason</u> for persecuting the applicant."   REAL ID Act § 101(a)(3), 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added).   Even before the passage of the REAL ID Act, petitioners were required to prove a nexus between the alleged persecution and one of the statutory grounds.   <u>INS</u> v. <u>Elias-Zacarias</u>, 502 U.S. 478, 483 (1992).   Courts required a showing that the persecution the alien suffered was, or would be, based "at least in part" on an impermissible motivation.   <u>Sanchez Jimenez</u> v. <u>U.S. Atty. Gen.</u>, 492 F.3d 1223, 1232-33 (11th Cir. 2007).

While the Act did not "radically alter[]" this standard, <u>In re J-B-N- & S-M-</u>, 24 I. & N. Dec. 208, 214 (BIA 2007), the REAL ID Act clarified the petitioner's burden to show that at least one of the statutory grounds was "one central reason" for the persecution.   In many cases, of course, persecutors may have more than one motivation.   In such "mixed motive cases," the law now requires that the protected ground be "one central reason" for the

explain, petitioner's application for asylum fails because he was unable to show that the attacks he faced, whether or not constituting persecution, were motivated by one of the statutory factors.

-8-

mistreatment, and that it not be "incidental, tangential, superficial, or subordinate to another reason for harm." In re J-B-N-, 24 I. & N. Dec. at 214.

For obvious reasons, a petitioner is not required to provide direct proof of motive, but must present some evidence on the subject due to its importance in the statutory scheme. Babini v. Gonzales, 492 F.3d 20, 22-23 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992). Often, the BIA evaluates several potential motivations and must rely on limited evidence to determine if a statutory ground was "one central reason for persecuting the applicant." Given the deferential nature of our review, the BIA's conclusion will stand on appeal, unless the evidence compels a contrary result.

The second REAL ID Act provision which prompted our remand of this case to the BIA addresses the role of corroborating evidence in asylum proceedings. See 8 U. S. C. § 1158(b)(1)(B)(ii). It provides that an applicant's testimony alone "may be sufficient to sustain [his] burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." Id. If the IJ determines that the alien should provide evidence to corroborate otherwise credible testimony, that evidence

"must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." Id.

On this issue, Singh contends that, because the BIA did not make an explicit finding that he lacked credibility, he is entitled to a rebuttable presumption of credibility on appeal, thus making the IJ's demand for additional corroborating evidence erroneous. INA §§ 208(b)(1)(B)(iii), 241(b)(3)(C). Although the IJ and BIA both ruled that Singh's testimony was insufficiently corroborated, we need not address this issue because we agree with the BIA that petitioner failed to prove a sufficient nexus between his persecution and one of the statutory grounds.

## III.

In its second review of the case, the BIA found that the harassment described by petitioner did not meet the "one central reason" standard. Its decision was based primarily on its evaluation of the evidence concerning the two incidents in which Singh suffered significant harm. First, the BIA found that Singh only sustained injuries during the 1995 attack on Rachhpal because he happened to be in close proximity to his father, and not because he was individually targeted for his beliefs or characteristics. Second, the Board concluded that the attackers responsible for the 2002 beating were economically motivated, and did not single out petitioner because of his political beliefs or family relationships. While the analysis for the two episodes is not

-10-

identical, the Board supportably concluded that the harm suffered by petitioner was not "on account of" one of the statutorily protected grounds in either instance.

Singh fails to marshal sufficient evidence to show that the injuries he suffered in the 1995 attack were in any way a result of his own political opinions or social group. Instead, he argues that because the BIA was willing to believe that his father was attacked on the basis of his political activity, this determination of motivation should also apply to the harm Singh suffered. Singh contends that Rachhpal's political opinions should be imputed to him, based on a pattern of harassment of his whole family by the Babbar Khalsa. Under Singh's theory, his nuclear family would be considered a social group, and Singh's affiliation with them would thus be the factor motivating the violence he endured.

We have previously considered claims citing imputed political opinion as the basis for persecution, and have held that "[a]n imputed political opinion, whether correctly or incorrectly attributed, may constitute a reason for political persecution within the meaning of the Act."[3] Vasquez v. INS, 177 F.3d 62, 65 (1st Cir. 1999) (quoting Ravindran v. INS, 976 F.2d 754, 760 (1st

---

[3] This precedent addresses Section 106(a) of the INA, 8 U.S.C. § 1105a(a), which predated the REAL ID Act, but the statutory amendments to the immigration law made no changes that would impact the way in which political opinions are imputed.

-11-

Cir. 1992)). However, we have also held that fear of persecution based on a relative's political activities is not reasonable where there is no evidence establishing that the petitioner himself was ever persecuted as a result of those activities or that "the government has a general practice of persecuting extended family members." Ravindran, 976 F.2d at 759.

Petitioner presents insufficient evidence that his family was targeted as a result of his father's political activities. Specifically, we note the Babbar Khalsa's treatment of Singh's mother as reflecting the groups's general attitude toward members of Singh's family who did not speak out against them. Singh's mother was not targeted in the attacks and was only approached by the militants when they were seeking food. This fact suggests that the Babbar Khalsa did not have a practice of persecuting the entire family, and that, even if Singh's father was abused primarily for his political opinions, the separatists did not impute his views to the rest of the family. Nor has Singh presented any evidence that he has been subject to any persecution in the many years following this attack beyond the repeated harassing phone calls. Besides voting in a local election in 2002, he was not politically active in India. The BIA's determination that neither Singh's political opinion nor his membership in his family was a central reason for the attack in 1995 was supported by substantial evidence.

Singh's argument that he experienced persecution in 2002 when he was beaten by members of the Babbar Khalsa also fails on "central reason" grounds. The record contained sufficient evidence for the BIA to uphold the IJ's finding that this attack was prompted primarily by economic motivations. Statements of perpetrators are a crucial factor to be considered in determining motive, In re S-P-, 21 I. & N. Dec. 486, 494 (BIA 1996), and Singh reported multiple such indicators of his attackers' intent. He testified that during the assault, he heard Jasbeet encourage the attackers to kill him so that "everything would be ours, his home, his property." In addition, he testified that during the harassing phone calls, the Babbar Khalsa would tell him that they were the ultimate heirs of the land he possessed. The conclusion that they were economically motivated was further reinforced by the fact that after Singh left India in 2004, the militants moved to partially occupy his empty house. To offset these statements, Singh offers only his own conjecture that the attack was linked to his father's political beliefs. This conjecture does not undermine the Board's finding that the attackers were driven by a desire to "control [Singh's] real property," and not "an enumerated ground of persecution."

In short, no evidence suggests that Singh was an intended target of the 1995 shooting on account of his father's political affiliations. As for the 2002 beating, the evidence supports the

BIA's conclusion that the militants were motivated primarily by economic factors. Hence there is no basis on which to overturn the BIA's decision.

**IV.**

Singh also seeks withholding of removal and protection under the CAT. These claims place a higher burden of proof on the petitioner than a counterpart claim for asylum. These forms of relief require the petitioner to prove that it is "more likely than not" he would face persecution or torture if he returned to his country. <u>Guillaume</u> v. <u>Gonzales</u>, 504 F.3d 68, 71 n.2 (1st Cir. 2007). Because Singh fails to establish his eligibility for asylum, his claims for withholding of removal and protection under the CAT necessarily fail to meet this higher threshold.

<u>The petition for review is denied.</u>