**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-2055

MAKHMUDBEK TAHIROVICH RADJABOV,
Petitioner,

v.

ERIC HOLDER JR., United States Attorney General,
Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before
Boudin, Hawkins,* and Thompson,
Circuit Judges.

Saher Macarius, Philip H. Mantis, and Audrey Botros, on brief
for Petitioner.
Tony West, Assistant Attorney General, Civil Division,
Jennifer Paisner Williams, Senior Litigation Counsel, and Tiffany
L. Walters, Attorney, Civil Division, U.S. Department of Justice,
Office of Immigration Litigation, on brief for Respondent.

August 30, 2012

---

* Of the Ninth Circuit, sitting by designation.

**HAWKINS**, **Circuit Judge**. Makhmudbek Tahirovich Radjabov ("Radjabov") seeks review of a final order from the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Radjabov alleges that he faces persecution and torture in his native Tajikistan at the hands of Tajik nationalists and the Tajik government because he is an ethnic Uzbek whose family members participated in a 1997 Uzbek uprising. The BIA rejected this contention, adopting in part the conclusions of the Immigration Judge ("IJ"), holding that the incidents of abuse Radjabov suffered were either not directed at him on a statutorily protected ground, or were not shown to be the result of government action or inaction.

This court has jurisdiction pursuant to section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(1)(4) (2006). Although the IJ's and BIA's analysis of the case is troubling, under the stringent standard of review we employ on such petitions, we deny relief.

## I. Background

Radjabov was admitted to the United States in July 2003, with a nonimmigrant exchange visitor visa authorizing him to remain here until October 2003. Radjabov overstayed his visa and remained in the United States because his family warned him of the conditions in Tajikistan. In July 2004, Radjabov filed an asylum application which was referred to an IJ after an interview with an asylum officer. In August 2004, the Department of Homeland Security commenced removal proceedings, charging Radjabov with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained in the United States for a time longer than permitted. Radjabov conceded removability but sought asylum and related relief. Although finding him credible, the IJ denied Radjabov's applications and granted voluntary departure. The BIA dismissed Radjabov's appeal, and he timely sought relief here.

Radjabov's father, a well-known proponent of Uzbek rights, was the head of the Tajikistan "National Front Movement."[1]

---

[1]Radjabov has referred to the group as the "National Front Movement" in his testimony, but elsewhere in the record and in his brief he refers to the group as the "Popular Front" which appears

The Front defended the ruling political party led by President Emomali Rahmon, who remains in power, against strong opposition by Islamists. Radjabov's brother also served in the National Front Movement. When President Rahmon made efforts to appease the Islamists, Radjabov's brother and father became "active participants" in a 1997 Uzbek uprising against the Rahmon government.

The year of the uprising, Radjabov's family began encountering abuse. In January and March 1997, several individuals in military uniforms, whom Radjabov identified as police officers, came to the family's house and took his father. On both occasions, Radjabov's father returned the next day beaten and bloody, but did not tell Radjabov what had happened. Radjabov's family tried to find out what had happened by going to the police, who denied having had custody of the father.

When Radjabov's father was taken a second time, Radjabov tried to help but was kicked and hit. After the second incident, Radjabov's family took his father to the hospital. In April 1997,

to be how the group is more commonly known in English.

Radjabov's father was taken for a third time by individuals in paramilitary uniforms. His family found his father in a hospital, where he died the next day. Radjabov's mother and brother filed complaints with many offices, which were never pursued.

In June 1997, individuals came to Radjabov's house and threatened the family that if they filed more complaints, they would face the same fate as the father. They pushed Radjabov and his family to the ground, beat them, and put knives to them. They set fire to Radjabov's kitchen with gasoline, which the fire department came to extinguish. Radjabov's mother then demanded that his brother leave Tajikistan. Radjabov believed his brother took refuge in either Russia or a central Asian country. When he last heard from his brother in 2007, Radjabov's brother told him that he was going to Tajikistan from Uzbekistan, but the brother disappeared.

Radjabov believes his father was targeted because his views on democracy and Uzbek culture differed from the local Tajik government and that his father was taken and beaten by the ruling political party led by President Rahmon. He believes his brother

went missing because of fear resulting from the abuses suffered by his family.

Radjabov left Tajikistan in August 1998 for Turkey where he attended university until 2003. During that time, he visited Tajikistan in 1999 and 2003, hoping that things had calmed there. In 1999, he stayed with his mother for one month without incident.

In January 2003, Radjabov again returned to Tajikistan for about a month, but this time faced trouble. He was soon mugged by Tajik nationalists who demanded money for the "right to walk in their territory." When he refused, they beat him, but he managed to escape them on a passing tram. Then, in February 2003, Radjabov was again beaten by a group of Tajik nationals who were speaking Farsi near a local bus station. The group told him "You Uzbeks should not stay here. And you Uzbeks should pay for staying here." Radjabov did not report the incident to the police. Radjabov testified that police officers were standing fifty to sixty meters away and believes even though they surely heard the ethnic insults, they did not intervene. Radjabov's injuries left him hospitalized for ten days. After his release, he returned to Turkey.

Radjabov again visited Tajikistan for two days in June 2003. During this visit, a group stopped him while he was with his Tajik girlfriend. The group insulted him for a dating a Tajik girl and demanded that he kneel and give up his money, Radjabov complied, and the group laughed and left. He then returned to Turkey before traveling to the United States.[2]

## II. Discussion

### A. Standard of Review and Legal Standards

In this case, the stringency of the standard of review matters greatly. We must uphold the BIA's asylum determination if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks

---

[2]As discussed further below, there is confusion in the record as to the number of incidents of abuse Radjabov suffered in 2003. Radjabov's brief, as well as the BIA and IJ opinions cite to only two incidents: the winter 2003 beating which resulted in Radjabov's ten-day hospitalization, and the summer 2003 humiliation in front of his Tajik girlfriend. Radjabov's asylum application, and the Government's brief, both cite to all three of the incidents listed here. Because under our standard of review, we look to the entire record to see if it compels granting Radjabov relief, we include all three events in our analysis.

omitted). We may reverse the BIA's findings of fact only if the evidence presented by the petitioner was such that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Vanchurina v. Holder, 619 F.3d 95, 99 (1st Cir. 2010). The court reviews the BIA's conclusions of law de novo, "with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles." Manzoor v. INS, 254 F.3d 342, 346 (1st Cir. 2001). Where the BIA deferred to or adopted the IJ's reasons for denying Radjabov's claims, the court reviews those portions of the IJ's decision as part of the final decision of the BIA. See Gourdet v. Holder, 587 F.3d 1, 5 (1st Cir. 2009).

To establish eligibility for asylum, an alien must demonstrate he is a refugee. See 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a); see also Laurent v. Ashcroft, 359 F.3d 59, 63 (1st Cir.2004). A refugee is a person unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42)(A); see also Laurent, 359 F.3d at 63-64. Once an alien proves past persecution, he creates a rebuttable presumption that his fear of future persecution is well-founded. See 8 C.F.R. § 208.13(b)(1); see also Fergiste v. INS, 138 F.3d 14, 18 (1st Cir.1998). Where an applicant has not shown past persecution, he may still demonstrate that his fear of future persecution is well-founded, albeit unaided by any presumption, if the fear is both subjectively genuine and objectively reasonable. See Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2003).

B. Past Persecution

Radjabov presents a strong claim that he suffered past persecution, but under our exacting standard, as well as the deference we accord to BIA determinations, we cannot say that the record compels a conclusion in his favor.

Radjabov first argues that we should overturn the BIA decision because the BIA and the IJ both utilized the wrong standard for the level of government involvement necessary to establish past persecution. The IJ indeed utilized an incorrect conceptual framework, analyzing whether the abuse suffered by

-9-

Radjabov was "with the consent or at the direction of the Government of Tajikistan," finding that it was not. Under that standard, Radjabov's testimony as to the policemen's failure to respond during his 2003 beating was not relevant, and the IJ did not take it into account.

However, the BIA did cite the correct, broader standard, recognizing that "persecution implies some connection to governmental action or inaction, related to a protected ground for asylum." A.R. 3 (citing Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006); Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005))(emphasis added)). It is also true, though, that the BIA, like the IJ, failed to note that Radjabov had testified that during the 2003 beating, police had stood by, had been aware that he was being beaten for his Uzbek ethnicity, but failed to intervene. Id. Radjabov's testimony on this point should have been taken into account. The IJ had found Radjabov credible, and Radjabov's testimony that on one occasion he had been abused due to government inaction would have lent support to his past persecution claim.

Yet, even if this evidence had been taken into account

explicitly, we still cannot say that the record compels the conclusion that Radjabov suffered abuse due to governmental action or inaction. As to the 1997 abuses Radjabov suffered, while possibly at the hands of the government, the record does not indicate that these were directed at him due to a protected ground, as opposed to just his father. While we have held that "'[a]n imputed political opinion, whether correctly or incorrectly attributed, may constitute a reason for political persecution within the meaning of the [INA],'" Vasquez v. INS, 177 F.3d 62, 65 (1st Cir. 1999) (quoting Ravindran v. INS, 976 F.2d 754, 760 (1st Cir. 1992)), the petitioner must show that such an imputation actually occurred. Id.; see also Singh v. Mukasey, 543 F.3d 1, 6 (1st Cir. 2008) (no persecution when petitioner was harmed during attack against father, but failed to establish that the attack was motivated by his own political opinions). Here, Radjabov has not shown that during the 1997 incidents, he was targeted as a result of his own status, or because his father's activities or political beliefs were imputed to him. As such, a rational finder of fact would not have to conclude that the 1997 incidents should be

-11-

considered as part of the basis of Radjabov's own persecution claim.

The record similarly does not force the conclusion that the 2003 incidents that were actually directed at Radjabov occurred due to government action or inaction. With respect to the winter 2003 mugging and the June 2003 humiliation in front of Radjabov's girlfriend, there is absolutely no evidence of government action or inaction—not even Radjabov's own testimony. Nor is there testimony that Radjabov reported the incidents to police, which we have held is enough to prevent the incidents from qualifying as "persecution." See, e.g., Castillo-Diaz v. Holder, 562 F.3d 23, 27-28 (1st Cir. 2009) (no past persecution where petitioner had not reported incidents of mistreatment to police).

Thus, the only incident that could possibly substantiate a past persecution claim is the winter 2003 incident when Radjabov was beaten as a result of his Uzbek ethnicity, while police officers stood in the distance, which resulted in Radjabov's injuries and hospitalization. As the Government points out, however, Radjabov has not shown that the police actually saw the

-12-

incident or actually heard the ethnic insults hurled at him; he concludes these facts based on how far he alleges them to have been from him. This is unfortunately insufficient to clear our legal hurdles.

Moreover, even if it was obvious from the record that the 2003 incident resulted from government inaction, an isolated incident of mistreatment due to government action or inaction does not necessarily give rise to a viable past persecution claim. It is true, as Radjabov argues, that individual incidents of abuse taken together can rise to the level of persecution, but here, the record does not compel the conclusion that they do.

First, it is not clear that the abuse Radjabov suffered was serious enough. There is no statutory definition of "persecution" and so the question is answered on a case-by-case basis. See Orelien, 467 F.3d at 71. Persecution "requires that the totality of a petitioner's experiences add up to more then mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw, 427 F.3d at 120. The mistreatment complained of must have "reached a fairly high threshold of seriousness, as well as

-13-

some regularity or frequency." Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007).

Though we do not minimize Radjabov's past treatment, we cannot say that his claim survives this exacting standard. First, this court has determined that claims citing abuse as much if not more egregious did not cross the "threshold of seriousness" necessary to overturn the BIA's denial of relief. For example, this court has upheld BIA determinations that a petitioner failed to establish past persecution where the petitioner was arrested, beaten, and detained by police seven times over a two-year period for participating in political demonstrations. See Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005); see also Bocova v. Gonzales, 412 F.3d 257, 261, 263 (1st Cir. 2005) (two incidents of arrest and severe beatings, as well as death threats), Nelson v. INS, 232 F.3d 258, 264 (1st Cir.2000)(three incarcerations in solitary confinement, plus physical abuse).

We cannot say that the three incidents of abuse directed specifically at Radjabov—the mugging, the beating, and the humiliation—together compel the conclusion that he has suffered

-14-

abuse of the requisite "severity, duration, and frequency."[3]

Second, the record does not compel the conclusion that the incidents of Radjabov's abuse were connected enough to constitute persecution.  Where multiple incidents give rise to an asylum petitioner's claim, this court determines whether the incidents were the result of "systematic mistreatment" or were rather "isolated incidents."  Khan v. Mukasey, 549 F.3d 573, 576 (1st Cir. 2008).  Here, where there is only evidence of government action or inaction as to one of the incidents of abuse targeted directly at Radjabov, there is no way to connect the incidents to one another in a manner that satisfies the past persecution standard.

## C. Well-Founded Fear of Future Persecution

Because we must affirm the BIA on its past persecution determination here, Radjabov's asylum claim rests on whether he has indisputably demonstrated that he has a well-founded fear of future

---

[3]Again, the IJ and BIA did not take into account the evidence of the first incident, Radjabov's mugging—nor does Radjabov cite it in his brief. It is not clear why this is so.  Yet, although it perhaps renders a close case closer, it does not change our conclusion.

-15-

persecution. Lopez Perez v. Holder, 587 F.3d 456, 461 (1st Cir. 2009); see also 8 C.F.R. § 208.13(b)(2). To do so, Radjabov must satisfy a subjective requirement—that he "genuinely fears persecution"—and an objective requirement—by "showing an objectively reasonable basis for that fear." Lopez Perez, 587 F.3d at 461-62. The latter test is satisfied "if a reasonable person in the petitioner's circumstances would fear persecution based on a statutorily protected ground." Nikijuluw, 427 F.3d at 122. It appears that both the BIA and IJ found that Radjabov had not provided evidence sufficient to meet either the subjective or objective requirements. Multiple factors weigh against us determining otherwise.

For one, Radjabov returned voluntarily to Tajikistan three times since he left the country for university in Turkey. Although on two of these visits home he encountered violence, the fact of these visits alone undercuts his claims to having an objective or subjective fear of persecution upon return. See Toloza-Jiménez v. Gonzáles, 457 F.3d 155, 161 (1st Cir. 2006) (determining an alien's two voluntary returns to her home country

-16-

to be a strong indication that she harbored no subjective fear).

Additionally, the Country Report from February 2009 upon which the

IJ relied in making his determination demonstrated that neither

discrimination against Uzbek minorities, nor police harassment were

common.  Radjabov takes issue with the IJ's and BIA's reliance on

the Report, but this was entirely permissible: the regular Country

Reports produced by the U.S. State Department are generally

persuasive of country conditions.  See, e.g., Zarouite v. Gonzales,

424 F.3d 60, 63 (1st Cir. 2005).  Finally, Radjabov's mother,

sisters, and one brother continue to live in Tajikistan without

incident.  Relatives' safety in the petitioner's native country,

while not conclusive, is relevant in determining the likelihood of

his persecution upon return and the reasonableness of his fear.

See Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999)("[T]hat

close relatives continue to live peacefully in the alien's homeland

undercuts the alien's claim that persecution awaits his return");

In re A-E--, 21 I. & N. Dec. 1157, 1160 (BIA 1998) (en banc)

(holding that the reasonableness of an alien's fear of persecution

is reduced when his family remains in his native country unharmed

-17-

for a long period of time after his departure).  Unfortunately, Radjabov's close case is not close enough to win him asylum on appellate review.

## D. Withholding of Removal and CAT Relief

To be eligible for withholding of removal, the petitioner must satisfy an even more demanding requirement: that there is a clear probability, or that it is "more likely than not," that he would be persecuted should he return to his home country.  See, e.g., Singh, 543 F.3d at 7;  Guillaume v. Gonzales, 504 F.3d 68, 71 n. 2 (1st Cir. 2007).  Thus, because Rajabov's claim for asylum fails, so too does his claim for withholding of removal.  See, e.g., Guillaume,504 F.3d at 71 n. 2; Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005).

Radjabov also argues for CAT relief, but offers no more than a few conclusory statements in his brief as to the basis of his claim.  Thus, it appears that this claim fully relies on conceptualizing the incidents underlying his persecution claim as torture.  As with his claim for withholding of removal, because the abuse he suffered does not rise to the level of persecution, it

cannot rise to the requisite level for CAT relief. <u>See, e.g.</u>, <u>Barsoum</u> v. <u>Holder</u>, 617 F.3d 73, 81 (1st Cir. 2010); <u>Singh</u>, 543 F.3d at 7.

On the basis of the foregoing, Radjabov's petition for review is DENIED.