# United States Court of Appeals
## For the First Circuit

No. 24-1616

EDER ANIBAL CANO-GUTIERREZ,

Petitioner,

v.

PAMELA J. BONDI, United States Attorney General,

Respondent.[*]

PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION
APPEALS

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

Kevin P. MacMurray and MacMurray & Associates on brief for
petitioner.

Brian Boynton, Principal Deputy Assistant Attorney General,
Civil Division, Matthew B. George, Senior Litigation Counsel,
Office of Immigration Litigation, and Peter Gannon, Trial
Attorney, Office of Immigration Litigation, Civil Division, U.S.
Department of Justice, on brief for respondent.

July 24, 2025

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Pamela J. Bondi is automatically substituted for
former Attorney General Merrick B. Garland as respondent.

**GELPÍ**, **Circuit Judge**.    Petitioner Eder Anibal Cano-Gutierrez ("Cano-Gutierrez"), a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ" and, together with the BIA, the "agency") denying his applications for asylum and protection under the Convention Against Torture ("CAT").    We discern no error and, accordingly, **deny** his petition.

## I. BACKGROUND

"We draw our background 'from the administrative record, including [Cano-Gutierrez's] testimony before the IJ, which the IJ found credible.'" Urias-Orellana v. Garland, 121 F.4th 327, 332 (1st Cir. 2024) (quoting Gonzalez-Arevalo v. Garland, 112 F.4th 1, 6 (1st Cir. 2024)).

### A. Underlying Facts

Cano-Gutierrez's petition stems from a series of armed robberies he experienced on his way to school as a teenager in Guatemala.    Before the IJ, Cano-Gutierrez described encountering "assailants" at gang-controlled checkpoints "waiting to rob people."    These assailants, he explained, "just wanted to take our belongings."    The thieves would "point a gun to [him]" and "assault [him] if [he] didn't give them [his] belongings."    The IJ did not make a finding that Cano-Gutierrez received credible death threats, nor did Cano-Gutierrez describe the severity of any harm

- 2 -

or suffering he experienced as a result of the thieves' threats or attacks. In fact, Cano-Gutierrez asserted that the robbers did not harm or threatened anyone else in his family and denied experiencing any other problems in Guatemala outside of the robberies. In total, Cano-Gutierrez claims he was robbed five times in Guatemala.

When the government asked Cano-Gutierrez, on cross-examination, to name the gang responsible for targeting him, he clarified that "these were not gangs" but "people that went out onto the streets to rob others." When asked why he was targeted, Cano-Gutierrez clarified that "it was not just me," adding that "many others" had been robbed. He further stated that most robberies happened in "isolated areas" and when "we had school fairs," explaining that the thieves would be "paying close attention" when they saw "a lot of people coming" from the fairs. To avoid getting robbed, Cano-Gutierrez, who would often travel to school on a motorcycle with a friend, began "wait[ing] like for two cars to go by so we could go right behind them." This strategy worked, according to his testimony, because the thieves "will rob you when they only see one vehicle alone." He also admitted that the thieves never asked him to join them, though he claims they recruited "other students."

Suspecting that the "gang members would eventually kill" him, Cano-Gutierrez fled Guatemala and then crossed the southern

border into the United States without authorization in January 2018. Months later, in April 2018, the Department of Homeland Security filed a Notice to Appear with the Executive Office of Immigration Review, charging Cano-Gutierrez with removability for being present in the United States without being admitted or paroled in violation of § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). In September 2018, Cano-Gutierrez admitted the allegations against him and conceded his removability. Later that year, in December 2018, he applied for asylum, withholding of removal, and CAT protection, claiming that he feared that the gangs who robbed him will harm and recruit him if he returns to Guatemala.

## B. Procedural History

On February 12, 2020, Cano-Gutierrez testified before an IJ at a final hearing on the merits of his applications. The IJ found his testimony credible. After considering his testimony and all documentary evidence submitted, the IJ ultimately denied his applications.

The IJ first considered Cano-Gutierrez's asylum application. She determined that the harm Cano-Gutierrez suffered did not rise to persecution because Cano-Gutierrez "ha[d] not described physical injuries requiring any medical attention or hospitalization and has never been detained or kidnapped by the persons who robbed him." She then found that Cano-Gutierrez failed

to show the required nexus between his proposed social groups and the harm he experienced. Specifically, the IJ explained that Cano-Gutierrez's proposed social groups -- young men and school-aged children -- were "not legally cognizable" because they were "not drawn with enough particularity." And, even if his proposed social groups were legally cognizable, the IJ found that Cano-Gutierrez failed to show that the gangs targeted him because of his membership in either group. Instead, the IJ held that the record evidence indicated that "the robberies happened so that these criminals could enrich themselves." The IJ reached a similar conclusion as to future persecution. In particular, she noted that while the evidence showed "generally harsh conditions" in Guatemala, Cano-Gutierrez did "not distinguish[] why he would be more likely than not to be targeted than anyone else" in Guatemala, "much less on account of a protected ground." For these reasons, the IJ denied him asylum.

The IJ then considered Cano-Gutierrez's application for withholding of removal. She reasoned that since Cano-Gutierrez failed to establish a well-founded fear of future persecution, "he [could not] meet the higher burden of proof that it [wa]s more

likely than not to occur."[1]  Accordingly, the IJ denied him withholding of removal.[2]

Lastly, the IJ turned to Cano-Gutierrez's request for protection under CAT.  She noted that Cano-Gutierrez had not proven that "any state actors of Guatemala ha[d] ever sought to harm him or ha[d] ever harmed him or any of his family members," nor had he shown "adequate collaboration or acquiescence between state actors and the robbers."  Because Cano-Gutierrez failed to prove that it was more likely than not "that he would be targeted by government actors or those acting with government acquiescence," the IJ denied his CAT request.

Cano-Gutierrez subsequently appealed to the BIA, which affirmed the IJ's determinations.  As to asylum, the BIA agreed that Cano-Gutierrez did not show that he experienced persecution, noting that "the harassment and threats described by [him] f[e]ll short" of persecution.  Further, the BIA affirmed the IJ's determination that Cano-Gutierrez failed to demonstrate a nexus

---

[1] The burden of proof required for withholding of removal is higher than that for asylum.  Therefore, "[i]t follows that if a claim for asylum is rejected on the merits, a counterpart claim for withholding of removal must necessarily fail." Perez-Rabanales v. Sessions, 881 F.3d 61, 68 (1st Cir. 2018) (quoting Villa-Londono v. Holder, 600 F.3d 21, 24 n.1 (1st Cir. 2010)).

[2] Because his brief lacks any arguments pertaining to the denial of his withholding of removal application, Cano-Gutierrez has waived any such challenge on appeal. See Urias-Orellana, 121 F.4th at 332 n.2.  Thus, this is where our discussion of this claim ends.

between his alleged harm and a protected ground, noting the lack of evidence in the record to demonstrate that "his membership in either of the proposed particular social groups was or would be at least one central reason for targeting him." The BIA also affirmed the IJ's finding that Cano-Gutierrez did not demonstrate a well-founded fear of future persecution, concluding that he failed to establish that his fear is "objectively reasonable." With respect to CAT protection, the BIA deemed the issue waived because Cano-Gutierrez did not specifically challenge the IJ's finding as to the state action requirement.

This petition followed.

## II. STANDARD OF REVIEW

"Where, as here, the BIA adopts and affirms the IJ's ruling but nevertheless examines some of the IJ's conclusions, we review both the BIA and IJ opinions as a unit." Gonzalez-Arevalo, 112 F.4th at 8 (quoting Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023)).

We review the agency's legal conclusions de novo and findings of fact under the substantial evidence standard. Chun Mendez v. Garland, 96 F.4th 58, 64 (1st Cir. 2024). Under the substantial evidence standard, we will only disturb the agency's factual findings when the administrative record as a whole compels a contrary conclusion than the one reached by the agency. See Akinsanya v. Garland, 125 F.4th 287, 293 (1st Cir. 2025). "That

- 7 -

the record supports a conclusion contrary to that reached by the [agency] is not enough to warrant upsetting the [agency's] view of the matter; for that to occur, the record must compel the contrary conclusion." Santos Garcia v. Garland, 67 F.4th 455, 460-61 (1st Cir. 2023) (quoting Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007)).

## III. DISCUSSION

Before us, Cano-Gutierrez contests only the agency's denial of his applications for asylum and CAT protection. We begin with his arguments pertaining to asylum.

### A. Asylum

An applicant seeking asylum bears the burden to establish that he is a "refugee" under the INA, 8 U.S.C. § 1158(b)(1)(A)-(B). A "'refugee'" under the INA "is unable or unwilling to return to" his country of origin "'because of persecution or a well-founded fear of persecution on account of'" a statutorily protected ground. Chun Mendez, 96 F.4th at 64 (quoting 8 U.S.C. § 1101(a)(42)(A)).

Cano-Gutierrez challenges the agency's denial of his application for asylum, advancing several arguments in support. As to persecution, Cano-Gutierrez first contends that the agency's failure to consider his "young age" and the "frequency and severity" of the robberies corrupted its persecution finding. Second, he argues that that the agency "failed to properly assess

- 8 -

the substantial weight of the evidence" in finding that he failed to establish a nexus to a protected ground. Regarding future persecution, Cano-Gutierrez asserts that the agency erred in finding that he failed to establish an objectively reasonable well-founded fear of future persecution on account of a protected ground. Because Cano-Gutierrez failed to show a nexus between the robberies he suffered and any of his alleged particular social groups, his petition fails under either a past- or future-persecution theory.[3]

## 1. Past and Future Persecution

To constitute persecution, the harm "must rise above unpleasantness, harassment, and even basic suffering." Villafranca v. Lynch, 797 F.3d 91, 95 (1st Cir. 2015) (quoting Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008)). "'[C]redible verbal death threats' can amount to persecution if they are 'so menacing as to cause significant actual suffering or harm.'" Santos Garcia, 67 F.4th at 461 (alteration in original) (quoting Lobo v. Holder, 684 F.3d 11, 18 (1st Cir. 2012)). And, while not

---

[3] To the extent Cano-Gutierrez also argues that the BIA erred in not addressing the IJ's determination that his proposed social groups were not legally cognizable, we need not address this argument as the nexus requirement is outcome determinative to his asylum claim. See Lopez-Lopez v. Sessions, 885 F.3d 49, 51 (1st Cir. 2018) ("Because the BIA's nexus holding was an independently sufficient basis for its decision to dismiss [petitioner]'s appeal, the BIA did not, and was not obligated to, address the other bases for the IJ's decision, contrary to [petitioner]'s arguments in his petition for review.").

- 9 -

required, "'physical violence . . . makes a threat more likely to constitute' persecution." Montoya-Lopez v. Garland, 80 F.4th 71, 80 (1st Cir. 2023) (quoting Javed v. Holder, 715 F.3d 391, 396 (1st Cir. 2013)). However, vague or hollow threats, without more, are insufficient to establish persecution. See Moreno v. Holder, 749 F.3d 40, 44 (1st Cir. 2014). A showing of past persecution creates "a presumption of future persecution." Urias-Orellana, 121 F.4th at 337.

A petitioner who is found to not have experienced past persecution may still qualify for asylum by demonstrating a "well-founded fear of future persecution through an offer of specific proof that [his] fear is both subjectively genuine and objectively reasonable." Montoya-Lopez, 80 F.4th at 80 (quoting Chen v. Lynch, 814 F.3d 40, 45 (1st Cir. 2016)). However, a showing that his fear is objectively reasonable is only part of the puzzle. As with past persecution, a petitioner must also show "a causal connection" between the feared future harm and a statutorily protected ground. Barnica-Lopez, 59 F.4th at 527 (quoting Martínez-Pérez v. Sessions, 897 F.3d 33, 39 (1st Cir. 2018)). "A noncitizen satisfies their burden as to nexus by demonstrating that a statutorily protected ground 'was or will be at least one central reason' for the harm they suffered or fear suffering." Pazine v. Garland, 115 F.4th 53, 65 (1st Cir. 2024) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). That standard requires

that the protected ground be more than "incidental, tangential, superficial, or subordinate to another reason for [the] harm." Sanchez-Vasquez v. Garland, 994 F.3d 40, 47 (1st Cir. 2021) (quoting Singh v. Mukasey, 543 F.3d 1, 5 (1st Cir. 2008)). A no-nexus finding is outcome determinative as to asylum. See Pazine, 115 F.4th at 58 ("Without a sufficient showing as to nexus, the harm the noncitizen suffered or fears suffering isn't a ground for asylum and their asylum claim will fail right out of the gate.").

To succeed in his asylum application, Cano-Gutierrez had to demonstrate that his status as a young man or a school-aged child "was or will be at least one central reason" for his targeting. The agency found that Cano-Gutierrez failed to show that the gangs targeted him because of his membership in either of his proposed groups. Instead, the agency held that the record evidence indicated that "the robberies happened so that these criminals could enrich themselves." The agency reached a similar conclusion as to future persecution. In particular, it noted that "while there are generally harsh conditions in Guatemala," including violence and crime, Cano-Gutierrez "has not distinguished why he would be more likely than not to be targeted than anyone else," let alone "on account of a protected ground." The record does not compel a different conclusion.

- 11 -

Cano-Gutierrez's own testimony provided sufficient basis for the agency to conclude that greed was the motivation behind the robbers' actions. Notably, Cano-Gutierrez described encountering "assailants" waiting "to rob people" when he traveled from his home to school. According to his testimony, the robbers "just wanted to take our belongings." He also testified that robberies would intensify in "isolated areas," during "school fairs," and when the thieves saw "one vehicle alone." In fact, when asked why he was targeted, Cano-Gutierrez testified that he was unsure because "they robbed many others." Based on those facts, we cannot conclude that the agency erred in finding that Cano-Gutierrez's membership in one of his alleged protected groups was not a central reason the thieves targeted him.

The country conditions report in the record does not change that conclusion. The country conditions evidence here does reference the impact crime in Guatemala has on school-aged children, but in the context of the general impact it has on quotidian life in Guatemala. See Rodrigues v. Garland, 124 F.4th 58, 66 (1st Cir. 2024) ("Generalized country conditions reports that do not shed light on the asylum applicant's particular situation are ordinarily not enough to establish fear of future persecution."). Without more, this report similarly fails to demonstrate a nexus between the alleged future harm and Cano-Gutierrez's membership in one of his claimed social groups.

Finding no error with the agency's no-nexus determination, we need not address Cano-Gutierrez's other arguments as to past or future persecution. See Pazine, 115 F.4th at 64 (declining to reach petitioner's remaining asylum-related arguments because the agency's no-nexus finding was outcome determinative). Accordingly, we decline to disturb the agency's ultimate determination that Cano-Gutierrez is not eligible for asylum.

## B. CAT Protection

Next, we consider Cano-Gutierrez's challenge to the agency's determination that he was ineligible for CAT protection. To succeed on his CAT petition, Cano-Gutierrez needed to show by a preponderance of the evidence that, if returned to Guatemala, "he would be subject to torture by or with the acquiescence of a government official." Morgan v. Garland, 120 F.4th 913, 928 (1st Cir. 2024) (quoting Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014)). After a careful review of the record, the IJ found that Cano-Gutierrez had not met that burden. Cano-Gutierrez failed to challenge the IJ's finding before the BIA, and the BIA thus deemed the issue waived. Because we agree with the BIA, we decline to entertain Cano-Gutierrez's CAT argument for lack of exhaustion. See Ramos-Gutierrez v. Garland, 110 F.4th 1, 8 (1st Cir. 2024) ("[T]he petitioner has waived any CAT claim by failing to challenge the IJ's denial of CAT protection on appeal to the BIA.").

## IV. CONCLUSION

For these reasons, we **deny** Cano-Gutierrez's petition.