# United States Court of Appeals
## For the First Circuit

No. 15-2181

OMAR IVAN ALVIZURES-GOMES,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya and Lynch,
<u>Circuit Judges</u>.

    <u>Hans J. Bremer</u> and <u>Bremer Law & Associates, LLC</u> on brief for petitioner.
    <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, <u>Blair T. O'Connor</u>, Assistant Director, Office of Immigration Litigation, and <u>John F. Stanton</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

July 21, 2016

**SELYA**, **Circuit Judge**.  The petitioner, Omar Ivan Alvizures-Gomes, seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  Detecting no error, we deny the petition.

The relevant facts are uncomplicated.  The petitioner is a Guatemalan national who resided there until September 5, 2011, when he entered the United States illegally.  He was soon apprehended and placed in removal proceedings.  See 8 U.S.C. § 1227(a)(1)(B).  Conceding removability, he cross-applied for asylum, withholding of removal, and CAT protection.  In support, he claimed both past persecution and fear of future persecution on account of his anti-gang political opinion and his membership in a particular social group.  See id. § 1101(a)(42)(A).  He further claimed a likelihood that, if repatriated, the government would condone his torture at the hands of gang members.  See 8 C.F.R. § 1208.16(c).

On November 7, 2013, the petitioner testified before an immigration judge (IJ) that his flight to the United States was motivated by a fear of gangs in his native country after he had resolutely rejected their recruitment efforts.  He explained that this fear developed following several in-person confrontations and his receipt of three threatening letters.  He also proffered a

miscellany of documents, including country conditions reports, aimed at showing what life was like in Guatemala.

At the conclusion of the hearing, the IJ assumed that the petitioner was generally credible, but nonetheless denied him any relief because he had not established his refugee status. The IJ also found that the petitioner had failed to show a likelihood that Guatemalan authorities would acquiesce in torture directed at the petitioner.

The petitioner unsuccessfully appealed to the BIA. Following the BIA's adverse decision, he prosecuted the instant petition for judicial review.

Judicial oversight in immigration cases typically focuses on the final decision of the BIA. See Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015). Such an approach is in order where, as here, "the BIA has conducted an independent evaluation of the record and rested its affirmance of the IJ's decision on a self-generated rationale." Pulisir v. Mukasey, 524 F.3d 302, 307-08 (1st Cir. 2008).

Throughout our analysis of the BIA's decision, "[c]laims of legal error engender de novo review, with some deference to the agency's expertise in interpreting both the statutes that govern its operations and its own implementing regulations." Cabrera, 805 F.3d at 393. Factual findings are reviewed for compliance with the substantial evidence standard. See López-Castro v.

Holder, 577 F.3d 49, 52 (1st Cir. 2009). "Under this highly deferential standard, we must accept the BIA's findings so long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Such findings will be disturbed only "if the record is such as to compel a reasonable factfinder to reach a contrary determination." See Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).

Against this backdrop, we turn to the petitioner's specific claims, starting with his asylum claim. In a quest for asylum, the devoir of persuasion rests with the asylum-seeker to establish that he is a refugee as defined by the Immigration and Nationality Act. See Villa-Londono v. Holder, 600 F.3d 21, 24 (1st Cir. 2010). "A refugee is a person who cannot or will not return to her home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)).

The petitioner tries to wedge his asylum claim into this template in two ways. To begin, he complains about both persecution and a well-founded fear of future persecution based on his anti-gang political opinion. Alternatively, he complains

- 4 -

about both persecution and a well-founded fear of future persecution based on his membership in a discrete social group, namely, individuals returning to Guatemala from the United States while leaving behind family members in the United States.

With respect to his political opinion argument, the petitioner asserts that he was persecuted in Guatemala after he rebuffed recruitment efforts by gang members. Building on this foundation, he insists that his refusal to join the gangs expressed a political opinion. The BIA disagreed, and so do we.

In the BIA's view, the decisive flaw in this reasoning was that the petitioner failed to demonstrate a link between the alleged persecution, on the one hand, and his political opinion, on the other hand. This link, commonly referred to as the nexus requirement, draws its essence from the refugee statute's "on account of" language. The nexus requirement places the burden on the alien to demonstrate that claimed persecution was or will be "on account of" a statutorily protected ground, 8 U.S.C. § 1101(a)(42)(A); or, in other words, that the statutorily protected ground "was or will be at least one central reason for persecuting the [alien]," id. § 1158(b)(1)(B)(i); see Ratnasingam v. Holder, 556 F.3d 10, 13 (1st Cir. 2009).

The BIA's determination that the petitioner's proof lacked the necessary nexus is supported by substantial evidence in the record. Gangs may have a nearly infinite variety of reasons

for targeting a particular individual, including greed or an aspiration to increase their membership. See, e.g., Beltrand-Alas v. Holder, 689 F.3d 90, 94 (1st Cir. 2012); Mayorga-Vidal v. Holder, 675 F.3d 9, 18-19 (1st Cir. 2012). Given the wide range of possible motivations, "evidence of mere refusal to join a gang, without more, does not compel a conclusion that the alleged persecutor viewed the alien's resistance as an expression of a political opinion." Mayorga-Vidal, 675 F.3d at 18.

In this instance, both the IJ and the BIA concluded that the gangs' targeting of the petitioner was primarily motivated by a desire to swell their ranks. Nothing in the record either undermines this conclusion or compels a contrary conclusion. The petitioner's testimony attributed no statements to gang members about his political views, and the threats that he allegedly received were devoid of any references to his political stance. Given this empty record, we descry no error in the BIA's determination that the petitioner failed to show the required nexus between the actions taken by the gangs and any political opinion that he might have held.[1]

---

[1] In this venue, the petitioner labors to fill this void by suggesting that he not only refused to join the gangs but also communicated his political sentiments to the gang members by telling them that he was taught to work for his money. These statements, he contends, caused the gangs to target him and, thus, created the requisite nexus. Regardless of the merit or lack of merit of this contention — a matter on which we take no view — it comes too late. Since the petitioner failed to advance this

The petitioner's argument that he satisfies the nexus requirement through his membership in a particular social group is no more convincing. To satisfy the nexus requirement on this basis, an alien must show, at a minimum, that he is a member of a cognizable social group. See Carvalho-Frois v. Holder, 667 F.3d 69, 73 (1st Cir. 2012). A cognizable social group does not exist merely because an alien can conjure up a description of it. Instead, finding a cognizable social group requires a showing that the group is "a group of persons sharing a common, immutable characteristic that makes the group socially visible and sufficiently particular." Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010).

Here, the petitioner submits that he is a member of a social group consisting of individuals returning to Guatemala from the United States while leaving behind family members in the United States. As such, his thesis runs, Guatemalan gangs will target him because they will assume that he is wealthy.

In confronting this argument, we do not write on a pristine page. We previously have rejected a substantially identical argument: that individuals perceived as wealthy after returning to Guatemala from the United States constitute a

contention before the BIA, we lack jurisdiction to review it. See 8 U.S.C. § 1252(d)(1); see also Ramirez-Matias v. Holder, 778 F.3d 322, 327 (1st Cir. 2015).

cognizable social group. See Sam v. Holder, 752 F.3d 97, 100 (1st Cir. 2014); Sicaju-Diaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011). Such a proposed group fails to pass the applicable test because it cannot satisfy the social visibility requirement needed for social group status. See Rojas-Pérez v. Holder, 699 F.3d 74, 79 (1st Cir. 2012). "For a group to be socially visible, 'it must be generally recognized in the community as a cohesive group.'" Carvalho-Frois, 667 F.3d at 73 (quoting Mendez-Barrera, 602 F.3d at 26). The petitioner offers nothing to show that individuals returning to their native land after a stay in the United States, or wealthy individuals more generally, would be identified as a group by their community, much less that they would be persecuted on that account. See Rojas-Pérez, 699 F.3d at 78; Sicaju-Diaz, 663 F.3d at 4.

The petitioner attempts to blunt the force of these precedents by formulating a slightly skewed group definition — one that adds the fact that group members have family members who remain in the United States. For present purposes, however, this is a distinction without a difference: we cannot imagine how the petitioner's proposed group ("[r]epatriated Guatemalans with family in the U.S.") would be any more cohesive or socially visible than the proposed groups that we consistently have rejected. For his part, the petitioner has not attempted to address this point but, rather, has simply turned a blind eye to it. Nor has he

furnished even a smidgen of evidence indicating that this proposed social group either is recognized as a cohesive group in the community or has characteristics that enable ready differentiation between group members and the rest of the populace.  Thus, his proposed social group does not get him anywhere.  See Carvalho-Frois, 667 F.3d at 73; Mendez-Barrera, 602 F.3d at 26.

For these reasons, then, we uphold the BIA's denial of the petitioner's asylum claim.  So, too, we uphold the BIA's denial of the petitioner's withholding of removal claim.  After all, a claim for withholding of removal compels an alien to carry a heavier burden of proof than does a counterpart claim for asylum.  See Mendez-Barrera, 602 F.3d at 27.  Consequently, our rejection of the petitioner's asylum claim leads inexorably to the rejection of his withholding of removal claim.  See Villa-Londono, 600 F.3d at 24 n.1 ("[I]f a claim for asylum is rejected on the merits, a counterpart claim for withholding of removal must necessarily fail.").

This brings us to the petitioner's CAT claim.  Such a claim requires an alien to show that, if repatriated, he would more likely than not be tortured "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1); see Chhay v. Mukasey, 540 F.3d 1, 7 (1st Cir. 2008).  The BIA's

determination that the petitioner did not carry this burden of proof is unimpugnable.

The petitioner suggests that the Guatemalan government is unwilling to provide meaningful protection to him. This unwillingness, he says, is evidenced both by the government's failure to assist him in his prior travails with the gangs and by high levels of corruption and ineffectiveness throughout the government. In his view, this collocation of events makes it more likely than not that he will face torture, with the government's consent or acquiescence, should he be returned to his homeland.

In an attempt to flesh out this suggestion, the petitioner testified that he sought out the police after he received a threatening letter from a gang. The letter was unsigned and composed of characters cut out from magazine pages, and the police advised him that "they couldn't do much" with such limited information. This inertia, the petitioner says, is a telling indication that the government would not lift a finger to stop his torture at the hands of gang members.

The BIA brushed aside this surmise, concluding that the mere fact that the police, with nothing to go on, were unable to solve a particular case did not demonstrate their likely consent or acquiescence to torture. The BIA's reasoning stands on solid footing: several courts have held that such a conclusion is fully supportable. See, e.g., Garcia-Milian v. Holder, 755 F.3d 1026,

1034 (9th Cir. 2014) (concluding that "[e]vidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime"); Tamara-Gomez v. Gonzales, 447 F.3d 343, 351 (5th Cir. 2006) (finding "failure to apprehend the persons threatening the alien" insufficient to ground CAT claims); Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) ("That the police did not catch the culprits does not mean that they acquiesced in the harm."). We join this chorus.

Nor can the petitioner dig himself out of this hole by his reliance on country conditions reports, which he says demonstrate the overall corruption and ineffectiveness of the Guatemalan authorities. These reports do not relieve him of the obligation to point to specific evidence indicating that he, personally, faces a risk of torture because of these alleged shortcomings. Such specificity is a necessary element of a CAT claim. See Mendez-Barrera, 602 F.3d at 28 (upholding rejection of CAT claim "because the petitioner failed to proffer any particularized facts relating to her specific claim that she would face a likelihood of government-sanctioned torture"); see also Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009) (extolling virtues of "particularized evidence"). Inasmuch as the proof adduced by the petitioner falls well short of this standard, we conclude that there is substantial evidence to support the BIA's

dismissal of his CAT claim.  See Seng v. Holder, 584 F.3d 13, 20 (1st Cir. 2009).

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.


**So Ordered**.