# United States Court of Appeals
## For the First Circuit

No. 19-2280

JEPSEL ENRIQUE GÓMEZ-MEDINA,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Selya, and Barron,
Circuit Judges.

Ogor Winnie Okoye and BOS Legal Group, LLC on brief for petitioner.

Joseph H. Hunt, Assistant Attorney General, Civil Division, U.S. Department of Justice, Anthony C. Payne, Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, and Raya Jarawan, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice on brief for respondent.

September 15, 2020

**LYNCH**, **Circuit Judge**.  An Immigration Judge ("IJ") denied Jepsel Enrique Gómez-Medina's application for asylum, withholding of removal ("WOR"), and protection under the United Nations Convention Against Torture ("CAT").  The Board of Immigration Appeals ("BIA") dismissed his appeal, and Gómez-Medina now petitions for review of the BIA's decision.  We deny the petition.

I.

Gómez-Medina was born in San Pedro Sula, Honduras, in 1992.  He entered the United States near Laredo, Texas, without inspection on April 7, 2014; the Department of Homeland Security ("DHS") detained him on April 16, 2014 and charged him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Gómez-Medina said he feared returning to Honduras.  On April 22, 2014, he was screened by an asylum officer who determined his fear was credible.  During his screening, Gómez-Medina explained that his problems in Honduras began after an incident in 2010, roughly four years before his entry into the U.S.  He said he witnessed four men come to his grandfather's house, ask for his father by name, enter the house, then fire five gunshots at his father.[1]  One shot hit his father in the neck.  Gómez-Medina stated

---

[1]    He stated that his father was probably attacked because of his gang affiliation.  His father would often disappear for weeks at a time, sometimes returning "beat up" and looking like "he was in a fight."  More specifically, Gómez-Medina testified

that the gunmen left because they thought they had killed him, but his father survived the attack.  Gómez-Medina believed the attack was motivated by his father's gang affiliation.  Gómez-Medina did not share that affiliation.

Two years later, in 2012, Gómez-Medina began receiving threatening phone calls from men who he said were the men who had attacked his father wanting to know where his father was.  Gómez-Medina reported the threatening calls to the police and stated that the police did nothing.  By the end of 2012, Gómez-Medina had received so many threatening calls that he decided to move from San Pedro Sula, Honduras, to Santa Barbara, Honduras, to live with an uncle.  He said the men followed him there and attacked him in July 2013 and November 2013.  He eventually returned to San Pedro Sula, but the men followed him back and beat him again in January 2014.  Every time the men encountered Gómez-Medina, they asked where his father was.  The last time Gómez-Medina saw the men -- when they beat him in San Pedro Sula in January 2014 -- they accosted him in the middle of the afternoon.  They did not believe his statements that he did not know where his father was, threw him to the ground, and threatened that they would kill him if he

_____

that when he was six or seven years old, he and his mother watched from a window as his father argued with someone outside while wielding a knife.  His father told Gómez-Medina to leave the window and not look, then disappeared out of sight.  A few minutes later, he returned with the knife covered in blood; the next morning, Gómez-Medina found a body lying outside the house.

did not tell them where to find his father. The men stopped when they heard police sirens and told Gómez-Medina that he was "saved this time but next time we will kill you." Fearing for his safety, Gómez-Medina left Honduras in February 2014.

DHS served Gómez-Medina with a Notice to Appear on April 28, 2014, and in May 2014 he was released on bond by an IJ in San Antonio, Texas. Four years later, in October 2018, he was arrested in Massachusetts after a motor vehicle crash and charged with driving under the influence of alcohol. In January 2019, Gómez-Medina was arrested outside of his home and taken into custody. In April 2019, he conceded removability and later filed an application for asylum, WOR, and CAT relief.

In June 2019, an IJ held a hearing on removal and his application for relief. DHS conceded that because Gómez-Medina was found to have a credible fear of persecution but did not receive notice from DHS about the one-year filing deadline for asylum applications, he was a member of a class certified in Mendez-Rojas, see Mendez-Rojas v. Johnson, 305 F. Supp. 3d 1176, 1188 (W.D. Wash. 2018), and the IJ deemed his application for asylum timely filed. Based on the testimony at the hearing, the IJ found that Gómez-Medina was a credible witness because his testimony -- which was largely similar to what he had told the asylum officer in 2014 -- was corroborated by police reports and

- 4 -

hospital records.[2] The judge also found that the harm Gómez-Medina experienced was sufficient to rise to the level of persecution. The IJ determined that Gómez-Medina was part of a "particular social group" as a member of a nuclear family, see 8 U.S.C. § 1101(a)(42)(A), but also found that "animus against the family per se was not established" and there was insufficient evidence of a nexus between Gómez-Medina's membership in his family and the actions of the men threatening him. The IJ reasoned that Gómez-Medina was attacked not based on his family status but because his attackers wanted to locate his father. Finally, the IJ found that Gómez-Medina failed to show that the government of Honduras would be unable or unwilling to protect him and gave three reasons: (1) the police were willing to create and had created police reports about the January 2014 beating of Gómez-Medina; (2) the police intervened when he was attacked in January 2014; and (3) Gómez-Medina's attackers fled when they heard the police approaching, and so evidenced that they believed the police would arrest and prosecute them. The IJ denied Gómez-Medina's petition for asylum and ordered that he be removed to Honduras.

The IJ also denied his applications for WOR and protection under CAT. Withholding requires an "even higher"

---

[2]    Gómez-Medina filed police reports after the third beating; he was admitted to the hospital after his first and second beatings.

standard than asylum, see Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018), and there was insufficient evidence that Gómez-Medina would likely be tortured in Honduras.

Gómez-Medina appealed to the BIA. The BIA gave three reasons for dismissing Gómez-Medina's petition for asylum and WOR: (1) it (mistakenly)[3] "agree[d] with the Immigration Judge that the respondent ha[d] not demonstrated that his mistreatment rises to the level of past persecution under the Act"; (2) it determined that the IJ's finding that Gómez-Medina had not shown that Honduras was unwilling or unable to protect him was not clearly erroneous; and (3) it observed that Matter of L-E-A-, 27 I&N Dec. 581 (A.G. 2019), decided after the IJ found that Gómez-Medina was part of a "particular social group," held that "most nuclear families are not inherently socially distinct" and therefore Gómez-Medina would not have been eligible for asylum even if the IJ had found that there was a nexus between his family status and the actions of the men threatening him. Id. at 589 (internal quotation marks omitted). The BIA also denied Gómez-Medina's application for protection under CAT because there was no clear error in the IJ's finding that Gómez-Medina had not established that he would be tortured in Honduras if he were to return. This petition followed.

---

[3] In fact, the IJ found that Gómez-Medina had shown that his mistreatment rose to the level of past persecution.

- 6 -

II.

Where, as here, the BIA "adopts and affirms the IJ's ruling" but nevertheless "examines some of the IJ's conclusions," we review both the BIA and IJ opinions as a unit. Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012). This Court reviews findings of fact and credibility under the deferential "substantial evidence" standard, see, e.g., Avelar-Gonzalez v. Whitaker, 908 F.3d 820, 826 (1st Cir. 2018), which means that we will uphold factual findings unless "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

Gómez-Medina raises five issues in his petition. Four relate to his asylum application, while the fifth concerns his applications for WOR and CAT protection. As to asylum, he argues that the BIA erred by (1) upholding the IJ's determination that Gómez-Medina did not meet his burden of showing that Honduras's government would be unwilling or unable to protect him; (2) mischaracterizing the IJ's findings and thus mistakenly concluding that Gómez-Medina did not suffer past persecution; (3) concluding that Gómez-Medina's family did not constitute a social group; and (4) upholding the IJ's determination that there was an insufficient nexus between Gómez-Medina's familial relationship with his father and his persecution. Because we find the first issue dispositive,

we need not reach Gómez-Medina's other arguments.[4]  See Khan v. Holder, 727 F.3d 1, 7 (1st Cir. 2013) (refusing to reach challenges to alternative, independent grounds for the BIA's decision when one issue was dispositive).  With respect to the other relief requested in his petition, he argues that the BIA failed to consider his eligibility for relief via WOR or CAT.

To be eligible for asylum, Gómez-Medina bears the burden of showing that he is a refugee.  See 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).

---

[4]    Gómez-Medina is correct to point out that the BIA mistakenly claimed to "agree" with the IJ when it found that Gómez-Medina had not suffered past persecution.  The BIA erred, but it gave other, independent grounds for dismissing Gómez-Medina's appeal.  Because we hold that the BIA did not err in finding that Gómez-Medina has not met his burden of showing Honduras is unable or unwilling to protect him, any error was harmless.  See Conteh v. Gonzales, 461 F.3d 45, 59 (1st Cir. 2006) (noting that the BIA's error was harmless when it "had no effect on the outcome of the proceeding"); see also Nadal-Ginard v. Holder, 558 F.3d 61, 69 n.7 (1st Cir. 2009) (explaining that the court "need not reach the BIA's other rationale for its decision" because even "[i]f this finding constituted error . . . there was no prejudice").

We agree with the IJ and BIA that Gómez-Medina did not meet his burden of showing that the government of Honduras is unable or unwilling to protect him. To demonstrate that the government is unable or unwilling to protect Gómez-Medina requires him to show either "acquiescence in the persecutor's acts" or an "inability or unwillingness to investigate and punish those acts"; it is insufficient to show "a general difficulty preventing the occurrence of particular future crimes." Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007). Indeed, "the most telling datum is [whether] . . . the local authorities responded immediately to each incident." Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005).

Gómez-Medina argues that Honduras is unable or unwilling to protect him because: (1) the police department failed to record the names of Gómez-Medina's attackers in the police reports he filed after the January 2014 attack even though Gómez-Medina asserts in his petition to us that he gave them this information; (2) the police did not protect Gómez-Medina after he reported the ten threatening phone calls he received; and (3) Honduras's country report "demonstrates the futility of hoping for protection from a police force riddled with corruption and impunity." None of these compel the conclusion that Honduras was unwilling or unable to protect Gómez-Medina. See 8 U.S.C. § 1252(b)(4)(B). "That the record supports a conclusion contrary to that reached by the

[agency] is not enough to warrant upsetting the [agency]'s view of the matter . . . the record must <u>compel</u> the contrary conclusion." <u>Hincapie</u> v. <u>Gonzales</u>, 494 F.3d 213, 218 (1st Cir. 2007).

On the first point, there is uncertainty in the record about whether Gómez-Medina ever gave his attackers' names to the police on at least one occasion. He testified that, although he thinks he gave the police this information, he was "very nervous" and "[didn't] recall if [he] said the names or not." Next, Gómez-Medina's assertion that the Honduras police did in fact fail to protect him goes nowhere. <u>See</u> <u>Ortiz-Araniba</u>, 505 F.3d at 42; <u>Burbiene</u> v. <u>Holder</u>, 568 F.3d 251, 255 (1st Cir. 2009) (denying a petition for review when "the record does not indicate [petitioner's home country's] inability to stop the problem is distinguishable from any other government's struggles to combat a criminal element"). To the contrary, the evidence in the record -- such as the police reports and the fact that police sirens dispersed Gómez-Medina's attackers in 2014 -- supports the BIA and IJ's conclusion that the police were willing and able to investigate and prosecute the threats and attacks against Gómez-Medina. <u>Cf.</u> <u>Ortiz-Araniba</u>, 505 F.3d at 42 ("Where the police are willing to investigate incidents of violence and institute criminal proceedings against the perpetrators, we have held that the requisite connection between government inaction and fear of future persecution could not be shown."); <u>see also</u> <u>Harutyunyan</u>,

421 F.3d at 68. Indeed, Gómez-Medina himself testified that "if it . . . [weren't] for the police, they would have killed me." Finally, the IJ balanced the generalized country condition report evidence against specific, individualized evidence that the men who were threating Gómez-Medina were sufficiently afraid of the police that they fled the scene upon hearing sirens. See Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009) ("[E]ven though country conditions reports are deemed generally authoritative in immigration proceedings, the contents of such reports do not necessarily override petitioner-specific facts."). Overall, then, we conclude that the IJ and BIA's determinations were "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Hincapie, 494 F.3d at 218 (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). There is ample evidence to support the denial of asylum.

The same is true for the denial of Gómez-Medina's WOR and CAT claims. The WOR standard is "even higher" than the well-founded fear of future persecution standard used in determining refugee status in petitions for asylum. See Villalta-Martinez, 882 F.3d at 23; Harutyunyan, 421 F.3d at 68. Because, as we have explained, the BIA and IJ's conclusion that Gómez-Medina has not shown that Honduras is unable or unwilling to protect him was supported by substantial evidence, he cannot satisfy the higher WOR standard.

- 11 -

As to CAT, Gómez-Medina bears the burden of establishing that it is more likely than not that he would be tortured if removed to Honduras. See 8 C.F.R. § 208.16(c)(2); Ramirez-Perez v. Barr, 934 F.3d 47, 52 (1st Cir. 2019). For CAT purposes, torture requires the "consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1), and "acquiescence" requires that a "public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity," 8 C.F.R. § 1208.18(a)(7). The same evidence that supports the IJ and BIA's determination that Gómez-Medina failed to show that Honduras is unable or unwilling to protect him also supports the determination that he has not shown that it is more likely than not that the government of Honduras has consented or acquiesced to the attacks on him by private actors. Nor has he shown that he would be tortured.

The petition for review is denied.