# United States Court of Appeals
## For the First Circuit

No. 19-1006

ARMINDA SEDEMA POJOY-DE LEÓN;
BILDER AVDIEL DE LEÓN-POJOY,

Petitioners,

v.

WILLIAM P. BARR,
United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch and Lipez,[*]
Circuit Judges.

Kevin MacMurray, Daniel T. Welch, and MacMurray & Associates, on brief for petitioners.
Sabatino F. Leo, Senior Litigation Counsel, U.S. Department of Justice, Office of Immigration Litigation, Civil Division, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, on brief for respondent.

December 21, 2020

---

[*] While this case was submitted to a panel that included Judge Torruella, he did not participate in the issuance of the panel's opinion. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

**LIPEZ, Circuit Judge**. Petitioner Arminda Sedema Pojoy-De León ("Pojoy"),[1] a native and citizen of Guatemala, challenges an order of the Board of Immigration Appeals ("BIA") denying her applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). After a careful review of the record, we deny the petition.

## I.

We draw the facts from the evidence in the administrative record, including Pojoy's asylum application and her testimony before the Immigration Judge ("IJ").

### A. Background

Pojoy and her minor son resided in Guatemala until June 13, 2014, when they entered the United States without inspection. They were apprehended two days later and placed in removal proceedings. On September 3, 2014, Pojoy filed an application for asylum and withholding of removal on behalf of herself and her son, claiming both past persecution and fear of future persecution based on her "[p]olitical opinion" and her "[m]embership in a particular social group." Pojoy also claimed a likelihood that, if returned to Guatemala, she would be subjected to torture because

---

[1] Pojoy is the lead petitioner. She is referred to as Arminda Sedema Pojoy-Lopez in the administrative record and in the parties' briefs to this Court. Bilder Avdiel De León-Pojoy, her minor son, maintains a derivative claim.

"[i]t is dangerous and the government is corrupt," and Pojoy was "not confident the police or the judicial system in Guatemala [was] willing or able to protect [her] from the violence that is so prevalent in that country." Pojoy's affidavit in support of her application also stated that she feared for her life because of "violence between different villages and gangs" in Guatemala.

In her memorandum of law to the IJ in support of her asylum claim, Pojoy asserted persecution based on membership in a social group consisting of "Guatemalan women," who, she claimed, "are subject to violence and discrimination, but are unable to receive official protection." She argued, relying on a U.S. Department of State Report on Country Conditions in Guatemala, that Guatemalan society perceives women as inferior to men and tolerates their mistreatment. In an amended affidavit supporting her asylum claim, Pojoy added details about her father. Pojoy averred that when her mother was pregnant with her, her father threatened to kill her mother if she carried the pregnancy to term. According to Pojoy, her father eventually left for the United States but was later deported after being "accused of rape." After her father returned to Guatemala, when Pojoy was nineteen years old, she started "to see him around town, but [she] never talked to him." Pojoy also stated that her female cousin had been raped

and killed by a group of gang members, and "[o]ne of the killers [was] walking around free."

On November 16, 2017, Pojoy testified before an IJ that she left Guatemala because she was afraid of what her father could do to her. She repeated the assertion contained in her amended affidavit that her father had tried to kill her mother when her mother was pregnant with her, and she expanded on her encounters with her father. Pojoy testified that she first met him in 2000, at age thirteen, when he showed up one day in front of Pojoy's school and introduced himself as her father. After he then moved to the United States, she did not see him again until after his deportation back to Guatemala in 2006 or 2007, when Pojoy was nineteen or twenty years old. Pojoy stated that during that second encounter her father told her that she "look[ed] very much like [her] mother" and "grabbed [her] by the nose," which "really hurt."[2] Pojoy testified that she had a third and last in-person interaction with her father in 2009, when he came to her home, grabbed her by the nose again, and "repeated that [she] look[ed] very much like [her] mother," which made her feel afraid.

Pojoy said that her father started calling her in 2012, after his girlfriend passed away, and during those phone

---

[2] Pojoy's mother died of cancer in 2003, when Pojoy was sixteen years old.

-4-

conversations he asked Pojoy for money and requested that she move in with him because she "was his daughter."[3]  She also testified that during one of those phone conversations her father threatened to kidnap her and her son if she did not agree to move in with him.  When she told her aunt in 2013 about her father's calls, her aunt warned her to be careful around him and told her about his attempts against her mother's life.  Pojoy then stopped responding to her father's phone calls.  She also testified that she was afraid of him because he "always carried a pistol in his waist" and drank "a lot."

Pojoy explained that she did not contact the police because "the police do[n't] do anything ever in [Guatemala]" and they do "not believe anything that women say."[4]  In 2014, after her father told her that he was planning to move to the town where she lived, she decided to leave for the United States.  When her attorney asked her what she thought would happen if she returned to Guatemala, Pojoy responded that her father would look for her

---

[3] Pojoy testified that when her father asked her to move in with him, she responded, "later."  According to Pojoy, she did not dare tell him "no" because she was afraid of how he would react.

[4] Pojoy testified that her cousin had reported to the Guatemalan police that she was being threatened by "some guys," but the police dismissed her complaint, telling her that the men were "just playing."  Her cousin was later raped and murdered and two of the men involved in her cousin's murder were out of prison.

and make her move in with him.  She also stated she was afraid to go back to Guatemala because of its high rate of delinquency and violence.

During cross-examination, Pojoy admitted that she had not mentioned in her original asylum application her father's treatment of her despite her claim at the hearing that she was seeking asylum and withholding of removal because of her fear of him.  She also acknowledged that she last had in-person contact with her father in 2009.  Hence, when she left for the United States in 2014, she had not seen him in five years.  Finally, Pojoy noted that she had been in counseling "for some time" and had been diagnosed with Posttraumatic Stress Disorder ("PTSD") stemming from the "traumatic experiences" she had during her "childhood and adolescence," including her cousin's death, and "violence [she had] witnessed in Guatemala."[5]

## B.  Decisions of the IJ and BIA

The IJ denied Pojoy's request for relief and protection from removal.  First, the IJ found that Pojoy's testimony was not credible because she had testified about events and details that

---

[5] Beyond her testimony, Pojoy provided several supporting documents to the IJ, including her original affidavit accompanying her asylum application, her amended affidavit, a country conditions report from the Department of State, and letters from family members and her therapist.

she had failed to mention in her asylum application or the supporting affidavits she had submitted prior to the hearing.[6] However, for purposes of the analysis, the IJ assumed that Pojoy had testified credibly. With regard to asylum, the IJ determined that Pojoy had not established that she was persecuted or had a "well-founded fear" of future persecution because her father's actions toward her did not "rise above unpleasantness, harassment, and even basic suffering." Additionally, the IJ held that, even assuming Pojoy's proposed group of Guatemalan women was a cognizable social group for purposes of the asylum analysis, Pojoy had not established "that a central reason for her being targeted by her father [was] because she is a Guatemalan woman." Rather, the IJ found that Pojoy's father targeted her because she was "his daughter." Thus, she failed to meet the required nexus between the alleged persecution and a protected ground.

For the same reasons, the IJ held that Pojoy had not established eligibility for withholding of removal, noting that because she could not establish eligibility for asylum under the "well-founded fear standard," it "follow[ed] that she also fail[ed] to demonstrate eligibility for withholding of removal under the more stringent 'more likely than not' standard."

---

[6] The IJ, however, did find credible the evidence concerning the rape and murder of Pojoy's cousin.

Finally, while the IJ found that there was a "prevalence of violence against women and unlawful violence committed by police" in Guatemala, the IJ concluded that Pojoy had failed to show a likelihood that Guatemalan authorities would acquiesce to, or engage in, torture against her.

Pojoy appealed to the BIA. Instead of addressing the IJ's adverse credibility finding, the BIA upheld the IJ's determination that, even if Pojoy had testified credibly, she had not established eligibility for asylum, and by extension, withholding of removal. As the BIA put it, "even if Pojoy's proposed group were found to be a cognizable particular social group, [Pojoy] ha[d] not met her burden to show that membership in that group was or will be one central reason for the past or feared future harm."

With regard to protection under the CAT, the BIA similarly concluded that Pojoy had failed to establish eligibility because she did not show that it is "more likely than not" that she would be tortured upon her return to Guatemala at the hands, or with the acquiescence, of the government. Even Pojoy's testimony about her cousin's rape and murder did not demonstrate that possibility.

The BIA dismissed her appeal. This petition for review ensued.

-8-

## A. Standard of Review

We review the BIA's decision as well as any portions of the IJ's opinion adopted by the BIA. Bonilla v. Mukasey, 539 F.3d 72, 76 (1st Cir. 2008). We examine the BIA's legal conclusions de novo and the underlying factual findings using the deferential substantial evidence standard, Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012), thereby accepting findings of fact "as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" Diaz Ortiz v. Barr, 959 F.3d 10, 16 (1st Cir. 2020) (quoting Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)); see also Singh v. Mukasey, 543 F.3d 1, 4 (1st Cir. 2008) (noting that the BIA's "factual findings underlying the denial of asylum" must be upheld "'unless any reasonable adjudicator would be compelled to conclude to the contrary'" (quoting Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)))).

## B. Asylum

To be eligible for asylum, the applicant must show that she is unwilling or unable to return to her country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Diaz Ortiz, 959 F.3d at 16 (quoting

8 U.S.C. § 1101(a)(42)(A)). The applicant may make this showing by establishing that she suffered past persecution, "which creates a rebuttable presumption of a well-founded fear of future persecution." Paiz-Morales v. Lynch, 795 F.3d 238, 243 (1st Cir. 2015) (quoting Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014)). Establishing past persecution ordinarily requires an applicant to show that she experienced "more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). Absent evidence of past persecution, "the 'well-founded fear' requirement may be satisfied with evidence of a 'reasonable likelihood' of future persecution, so long as the fear is 'genuine and objectively reasonable.'" Li Sheng Wu v. Holder, 737 F.3d 829, 832 (1st Cir. 2013) (citation omitted) (first quoting Smith v. Holder, 627 F.3d 427, 437 (1st Cir. 2010); and then quoting Aguilar-Solís v. INS, 168 F.3d 565, 572 (1st Cir. 1999)). To meet the "objectively reasonable" requirement, the applicant must produce "credible, direct, and specific evidence supporting a fear of individualized persecution in the future." Id. (quoting Decky v. Holder, 587 F.3d 104, 112 (1st Cir. 2009)).

Additionally, the applicant bears the burden of demonstrating that the claimed persecution was or will be "on account of" a statutorily protected ground, 8 U.S.C. § 1101

(a)(42)(A) -- the "nexus" requirement. See Alvizures-Gomes v. Lynch, 830 F.3d 49, 53 (1st Cir. 2016). That requirement is met if the applicant can prove that a "statutorily protected ground 'was or will be at least one central reason for persecuting the [alien].'" Id. (alteration in original) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Importantly, "[w]hether the harm suffered by an asylum applicant was inflicted 'on account of' a protected ground is 'generally [a] question[] of fact.'" Singh, 543 F.3d at 4 (second and third alterations in original) (quoting Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008)).

While Pojoy devotes a substantial part of her brief to contesting the IJ's credibility findings and arguing that her proposed group of Guatemalan women is a particular social group, those arguments are not relevant to our review. Despite finding Pojoy's testimony not credible, the IJ assumed, favorably to Pojoy, that her testimony was credible. Likewise, the IJ assumed favorably to Pojoy that her proposed group was a cognizable social group for purposes of the asylum analysis. Having made these assumptions, the IJ nevertheless found that Pojoy failed to establish a nexus between that social group and her father's alleged persecution or her fear of future persecution.

The BIA, in turn, did not pass judgment on the correctness of the IJ's credibility determination or whether

-11-

Pojoy's proposed social group was cognizable under the statute. Rather, it simply approved of the IJ's alternative determination that, even assuming these two issues were resolved favorably to Pojoy, her claims still failed because she did not establish the required nexus between her persecution and the statutory ground she asserted, namely, her status as a Guatemalan woman. We therefore limit our analysis to determining whether the record compels a finding on the nexus issue contrary to the BIA's. See id.; Gailius v. INS, 147 F.3d 34, 44 (1st Cir. 1998) (noting that our review is limited solely to the grounds invoked by the agency).

To satisfy the nexus requirement, Pojoy had to show that her membership in the group of Guatemalan women "was or will be at least one central reason for [her] persecuti[on]."[7] Alvizures-Gomes, 830 F.3d at 53 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). She had to "provide sufficient evidence to forge an actual connection between the harm and [her membership in the group]." Giraldo-Pabon v. Lynch, 840 F.3d 21, 25 (1st Cir. 2016) (quoting Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007)). The

---

[7] Notably, Pojoy does not allege, much less prove, that her membership in the alleged particular social group of Guatemalan women "was or will be at least one central reason for [her] persecuti[on]." Alvizures-Gomes, 830 F.3d at 53 (emphasis added) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Instead, she alleges only that she experienced persecution "at least in part because she was a woman." Brief for Petitioners at 21 (emphasis added).

-12-

evidence provided by Pojoy about her encounters with her father, in person and by phone, however, relates to her specifically and the nature of her relationship with him.  Pojoy testified that her father asked her for money and to move in with him because she was his daughter and, according to Pojoy, he persistently told her that she resembled and reminded him of her mother.  Moreover, Pojoy admitted that she had not seen her father in the five years before she left for the United States, and there is no evidence that the calls continued after her departure.

In short, the evidence on the record does not show that "the scope of [any] persecution extends beyond a 'personal vendetta.'"  Costa v. Holder, 733 F.3d 13, 17 (1st Cir. 2013) (upholding the BIA's dismissal of a noncitizen's appeal because substantial evidence showed that "the risk that [the noncitizen] face[d] [was] personal, and not due to her membership in a social group").

To the extent Pojoy presses her cousin's rape and murder and the machismo culture she claims is prevalent in Guatemala as evidence of future persecution, such speculation is insufficient "to forge the statutorily required 'link.'"  Guerra-Marchorro v. Holder, 760 F.3d 126, 129 (1st Cir. 2014).  The evidence in the record does not compel a finding, contrary to the finding of the

BIA, that Pojoy was or will be persecuted because she is a Guatemalan woman.

## C. Withholding of Removal and Protection under the CAT

Pojoy also seeks withholding of removal and protection under the CAT, both of which "place a higher burden of proof on the petitioner than a counterpart claim for asylum." Singh, 543 F.3d at 7. An applicant seeking withholding of removal has the burden of demonstrating that it is more likely than not that she would face persecution on account of a protected ground if returned to her country. Paiz-Morales, 795 F.3d at 245. In turn, relief under the CAT requires the applicant to show that "it is more likely than not that [s]he will be tortured if returned to h[er] homeland." Jiang v. Gonzales, 474 F.3d 25, 32 (1st Cir. 2007). Because Pojoy fails to establish her eligibility for asylum, her claims for withholding of removal and protection under the CAT necessarily fail to meet these more stringent standards. See Singh, 543 F.3d at 7; Santosa v. Mukasey, 528 F.3d 88, 92 n.1 (1st Cir. 2008) ("The standard for withholding of removal is more stringent than that for asylum. The CAT standard, in turn, is more stringent than that for withholding of removal." (citation omitted)); Guillaume v. Gonzales, 504 F.3d 68, 71 n.2 (1st Cir. 2007) (explaining that if an applicant cannot satisfy the standard for asylum eligibility, he will also be unable to satisfy the

-14-

higher standards for withholding of removal or protection under the CAT).

## III.

For the foregoing reasons, the petition for review is **denied**.