# United States Court of Appeals
## For the First Circuit

No. 20-2106

ROBSON XAVIER GOMES,

Petitioner,

v.

MERRICK B. GARLAND,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch and Barron, <u>Circuit Judges</u>,
Burroughs,[**] <u>District Judge</u>.

<u>SangYeob Kim</u>, with whom <u>Gilles Bissonnette</u>, <u>American Civil Liberties Union of New Hampshire</u>, <u>Anna R. Welch</u>, <u>Suzannah Dowling</u>, <u>Blake McCartney</u>, and <u>Cumberland Legal Aid Clinic University of Maine School of Law</u> were on brief, for petitioner.
<u>Jane T. Schaffner</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom <u>Brian Boynton</u>, Acting Assistant Attorney General, Civil Division, and <u>Papu Sandhu</u>, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland has been substituted for Acting Attorney General Robert Montague Wilkinson.

[**] Of the District of Massachusetts, sitting by designation.

November 3, 2021

**BURROUGHS**, **District Judge**. An Immigration Judge ("IJ") denied Petitioner Robson Xavier Gomes' applications for asylum, withholding of removal, cancellation of removal, protection under the United Nations Convention Against Torture ("CAT"), and voluntary departure. The Board of Immigration Appeals ("BIA") then dismissed his appeal. Now, Mr. Gomes petitions for review of the BIA's decision on his asylum and withholding of removal claims.[1] For the reasons below, we dismiss one of the claims in the petition because we lack jurisdiction over it and deny the others.

## I. Background

A.  Legal Framework for Asylum and Withholding of Removal

Our case law is clear that:

> [t]o be eligible for asylum, the applicant must show that []he is unwilling or unable to return to h[is] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group ["PSG"], or political opinion. The applicant may make this showing by establishing that []he suffered past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution. Establishing past persecution ordinarily requires an applicant to show that []he experienced more than mere discomfiture, unpleasantness,

---

[1] Mr. Gomes does not appeal to this court the BIA's determination that the IJ correctly concluded that he was ineligible for cancellation of removal and voluntary departure. Additionally, although he initially sought our review of the BIA's decision on his CAT claim, he abandoned that claim on September 20, 2021 pursuant to Federal Rule of Appellate Procedure 42(b).

- 3 -

harassment, or unfair treatment. Absent evidence of past persecution, the well-founded fear requirement may be satisfied with evidence of a reasonable likelihood of future persecution, so long as the fear is genuine and objectively reasonable. To meet the objectively reasonable requirement, the applicant must produce credible, direct, and specific evidence supporting a fear of *individualized* persecution in the future.

Additionally, the applicant bears the burden of demonstrating that the claimed persecution was or will be on account of a statutorily protected ground -- the nexus requirement. That requirement is met if the applicant can prove that a statutorily protected ground was or will be at least one central reason for persecuting the [alien]. Importantly, [w]hether the harm suffered by an asylum applicant was inflicted on account of a protected ground is generally [a] question[] of fact.

Pojoy-De León v. Barr, 984 F.3d 11, 16 (1st Cir. 2020) (final four alterations and emphasis in original) (citations and internal quotation marks omitted).

"The standard for withholding of removal is even higher; the applicant must show that it is more likely than not that []he would be subject to persecution on account of an enumerated ground if []he were repatriated." Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018) (citing 8 U.S.C. § 1231(b)(3) and Mayorga-Vidal v. Holder, 675 F.3d 9, 13 (1st Cir. 2012)).

B.   Facts

Mr. Gomes was born in Brazil in 1974. When he was nineteen years old, he came to the United States. He lives with

- 4 -

his common-law wife in New Hampshire. They have two children who are both U.S. citizens. Mr. Gomes has been consistently employed and owns a commercial cleaning company.

Mr. Gomes owns land in Xinguara, a rural area of Brazil. His parents reside in a small city nearby. Mr. Gomes' land was originally owned by his father but was transferred to him about twenty years ago because Mr. Gomes' father feared that it would be invaded and/or attacked by members of the "Partido dos Trabalhadores" ("PT") and/or the "Movimento dos Trabalhadores Sem Terra" ("MST").[2] Members of the PT and the MST invade farmland and perpetrate violence throughout Brazil. They invaded Mr. Gomes' land on multiple occasions, burning it and killing two of Mr. Gomes' employees in the process. Since his arrival in the United States, Mr. Gomes has returned to Brazil regularly to check on his land and see his parents.

In 2009, intending to relocate his family to Brazil, Mr. Gomes packed a shipping container with some of his belongings—including motorcycles, commercial cleaning equipment, and a safe that contained firearms—and arranged for it to be shipped to Brazil. Because the container's location was unknown for more than a year, Mr. Gomes hired a broker to track it down. The broker

---

[2] The Portuguese phrases "Partido dos Trabalhadores" and "Movimento dos Trabalhadores Sem Terra" mean "Workers' Party" and "Landless Workers' Movement," respectively.

located the container at the port of Santos in Brazil. When Mr. Gomes went to recover the container, the port official told him that he would release the container only if Mr. Gomes paid him a large bribe. Mr. Gomes refused, telling the port official that the requested bribe was three-fold what the container's contents were worth and that he was "against the bribery." The official then threatened Mr. Gomes. Later, the official lowered his demand, but Mr. Gomes still refused to pay the bribe.

The Brazilian government charged, tried, and convicted Mr. Gomes in absentia for failing to pay taxes on the shipping container and unlawfully shipping firearms. Then, the Brazilian government issued an INTERPOL Red Notice, pursuant to which Mr. Gomes was apprehended by the U.S. Department of Homeland Security ("DHS") in December 2018. While being interrogated by agents from the U.S. Postal Inspection Service, DHS, and U.S. Immigration and Customs Enforcement, Mr. Gomes admitted to using his friend's U.S. passport to travel between Brazil and the United States. Mr. Gomes was criminally charged in the United States, and he pleaded guilty to making a false statement in violation of 18 U.S.C. § 1001(a)(2).

Following the guilty plea, DHS issued a Notice to Appear, which charged Mr. Gomes as removable under 8 U.S.C. §§ 1182(a)(6)(A)(i), 1182(a)(6)(C)(i), and 1182(a)(6)(C)(ii). During his removal proceedings, Mr. Gomes conceded removability

but sought relief in the form of asylum, withholding of removal, protection under CAT, and cancellation of removal, or, in the alternative, voluntary departure. In connection with his asylum claim, Mr. Gomes maintained that he had been persecuted (and feared future persecution) based on his membership in two PSGs: (1) landowners in Brazil who oppose corruption and (2) individuals opposed to and refusing to cooperate with corrupt government officials. Additionally, he asserted that he had been and would be persecuted for his political opinions. His application for withholding of removal was based on the same grounds.

C.   The IJ's Decision

Although the IJ found that Mr. Gomes "testified credibly," he denied Mr. Gomes all relief and ordered him removed.[3]

With respect to asylum, the IJ rejected Mr. Gomes' contention that he had suffered past persecution, finding that neither (1) the invasion/destruction of his land at the hands of the PT and/or the MST nor (2) the threats made against him by the PT, the MST, and/or port officials rose to the level of persecution. The IJ also found that Mr. Gomes did not have a well-founded fear of future persecution because he failed to demonstrate a reasonable probability that he would be singled out

---

[3] Because Mr. Gomes does not challenge (or has abandoned) them on appeal, we do not discuss his applications for protection under CAT, cancellation of removal, and voluntary departure.

for persecution or that there was a pattern and practice of harming similarly-situated individuals in Brazil. Next, the IJ considered whether Mr. Gomes had satisfied the "basis" and "nexus" requirements and found that he had not. The IJ concluded that Mr. Gomes' proposed PSGs——landowners in Brazil who oppose government corruption and individuals who oppose and refuse to cooperate with corrupt government officials——were not legally cognizable. Taking a belt-and-suspenders approach, the IJ also concluded that, even setting aside the fact that Mr. Gomes had failed to identify a legally cognizable PSG, he had also not adequately demonstrated that any alleged past or future persecution was tied to his membership in a PSG. Specifically, the IJ found that the PT and the MST invaded land to make money, not to target any particular group. Then, the IJ rejected Mr. Gomes' political opinion-based claim because Mr. Gomes had not expressed his political opinion to anyone nor was a political opinion imputed to him. Additionally, the IJ rejected Mr. Gomes' argument that he had been criminally prosecuted in Brazil because of his political opinion, instead finding that he had been prosecuted and convicted because of his criminal conduct (i.e., illegally shipping guns and failing to pay required taxes).

The IJ rejected Mr. Gomes' withholding of removal claim because Mr. Gomes had failed to satisfy the lower burden of establishing his eligibility for asylum.

- 8 -

D.   The BIA's Decision

The BIA dismissed Mr. Gomes' appeal.  With respect to his asylum claim, the BIA found that his proffered PSG, Brazilian landowners who oppose corruption, was not legally cognizable.[4] The BIA also rejected Mr. Gomes' political opinion argument, agreeing with the IJ that Mr. Gomes "did not express his political opinion to anyone or establish that a political opinion was imputed to him."  Additionally, the BIA found that, even if Mr. Gomes had identified a legally cognizable PSG or established that he had expressed a political opinion (or had one imputed to him), the IJ had correctly concluded that Mr. Gomes had failed to demonstrate a sufficient link between any past or feared harm and a protected ground.   In doing so, the BIA: (1) highlighted Mr. Gomes' testimony that the PT invaded his land to make money; (2) affirmed the IJ's decision that Mr. Gomes' criminal prosecution in Brazil stemmed from his own criminal conduct rather than a protected ground; and (3) found no error in the IJ's finding that Mr. Gomes was not targeted by port officials on account of his political opinion.

The BIA rejected Mr. Gomes' withholding of removal argument for the same reasons.

---

[4] In his BIA appeal, Mr. Gomes abandoned his other proposed PSG: "individuals opposed to and refusing to cooperate with corrupt government officials."

## II. Discussion

Mr. Gomes' arguments in the instant petition fall into three categories. First, he asserts that the BIA erred by rejecting his proposed PSG, "Brazilian landowners," and concluding that he was not and will not be persecuted because of his membership in that group. Second, he maintains that the BIA erred by finding that he did not express a political opinion and was not and will not be persecuted because of it.[5] Third, he contends that because of its other errors, the BIA incorrectly rejected his withholding of removal claim. Finding that we lack jurisdiction over his PSG claim and that his other arguments are unconvincing, we dismiss his PSG claim and deny the petition as to his other claims.

A.   The Court Lacks Jurisdiction to Consider Mr. Gomes' PSG Claim

The Government argues that we lack jurisdiction over Mr. Gomes' PSG claim because he failed to exhaust his administrative remedies. Specifically, it avers that whereas Mr. Gomes argues for the first time here that he has been or will be persecuted in Brazil because of his membership in one PSG, "Brazilian landowners," he argued before the BIA that he has been or will be persecuted in Brazil because of his membership in a

---

[5] In his petition, Mr. Gomes develops no separate argument that the BIA erred by concluding that no anti-corruption political opinion was imputed to him.

different PSG, "Brazilian landowners who oppose corruption." Mr. Gomes disputes this characterization of the record, maintaining that he did, in fact, advance the same PSG before the BIA that he advances here. For the reasons below, the Government is correct.

Before us, Mr. Gomes' position is clear: he has been or will be persecuted in Brazil because of his membership in the PSG "Brazilian landowners." Mr. Gomes, however, did not make that argument to the BIA. Nor did the BIA raise and address the PSG that he now proposes. See Mazariegos-Paiz v. Holder, 734 F.3d 57, 63 (1st Cir. 2013) (noting that "an issue is exhausted when it has been squarely presented to and squarely addressed by the agency, regardless of which party raised the issue (or, indeed, even if the agency raised it sua sponte)"). Accordingly, we have no jurisdiction to consider Mr. Gomes' PSG claim. See Granada-Rubio v. Lynch, 814 F.3d 35, 39 (1st Cir. 2016) ("To the extent the social group proposed now was not proposed to the BIA, it is unexhausted."); Mazariegos-Paiz, 734 F.3d at 62 (noting that the "exhaustion requirement is jurisdictional" and "constitutes a limitation on [this Court's] power of review" (citing Athehortua-Vanegas v. INS, 876 F.2d 238, 240 (1st Cir. 1989))).

As noted above, Mr. Gomes maintains that he did present the PSG that he asserts here to the BIA. But the record belies

his position.  In his BIA brief, Mr. Gomes made the following statements, among others:

- "The [IJ] erred in finding that landowners in Brazil who oppose corruption is not a cognizable [PSG]."

- "Brazilian landowners who oppose corruption are sufficiently particular."

- "Mr. Gomes narrows his proposed social group even further by adding an additional element: Brazilian landowners who also oppose government corruption."

- "The [IJ] erred in finding that Mr. Gomes failed to establish that he was persecuted on account of his membership in the [PSG] 'Brazilian landowners who oppose government corruption.'"

These assertions clearly establish that Mr. Gomes' proposed PSG was "Brazilian landowners who oppose corruption."[6]

Additionally, the BIA's written decision demonstrates that the BIA did not take it upon itself to independently evaluate the "Brazilian landowners" PSG notwithstanding Mr. Gomes' failure to raise it.  In summarizing Mr. Gomes' arguments, the BIA noted that he "alleged a fear of harm based on . . . his membership in the proffered [PSG] of landowners in Brazil who oppose government corruption."  Further, in analyzing Mr. Gomes' claims, the BIA observed, among other things, that his "narrowing characteristic of opposing government corruption is ambiguous" and "sets no

_____

[6] By failing to challenge the BIA's determination regarding the "Brazilian landowners who oppose corruption" PSG here, he has waived review of that determination.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 12 -

guidelines as to what is considered government opposition or who is considered a landowner" and that he had "not demonstrated that landowners in Brazil who oppose government corruption are set apart or distinct from other persons within Brazilian society such that they are considered a distinct social group."

In light of the foregoing, we conclude that Mr. Gomes has failed to exhaust his administrative remedies with respect to the PSG that he asserts here.[7]  For that reason, we lack jurisdiction to consider his PSG claim.  Cf. Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) ("Given these procedural defaults, we decline to entertain his virgin claim of past persecution in this venue.").

---

[7] Mr. Gomes argues that because he proffered the "Brazilian landowners" PSG in his BIA Notice of Appeal ("NOA"), he exhausted his administrative remedies, but this argument is unavailing.  A single sentence in a largely-administrative NOA does not constitute exhaustion where Mr. Gomes indicated, on the very same form, that he would be filing a "separate written brief or statement" and did, in fact, submit a twenty-nine page brief wherein he clearly and repeatedly proffered only a different PSG. Additionally, it merits mention that Mr. Gomes' NOA challenges a finding, i.e., that "a landowner from Brazil was not a [PSG]," that the IJ never made.  The IJ opined only on the two PSGs that Mr. Gomes presented: "Brazilian landowners who oppose corruption" and "individuals who are opposed to and refuse to work with corrupt government officials."  Against this backdrop, we find that the PSG that Mr. Gomes now advances was neither "squarely presented" to nor "squarely addressed" by the BIA and that we therefore lack jurisdiction to consider it.  Mazariegos-Paiz, 734 F.3d at 63.

B.    The BIA's Decision on Mr. Gomes' Political Opinion Claim Was Supported by Substantial Evidence

Next, Mr. Gomes argues that the BIA erred by concluding that he (1) did not express a political opinion and (2) failed to demonstrate that he had been harmed because of it.  Because these are questions of fact, "we will uphold [the] factual findings unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'"  Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020) (quoting 8 U.S.C. § 1252(b)(4)(B)); see Pojoy-De León, 984 F.3d at 16 (noting that whether harm is inflicted based on a protected ground is a factual question).  "Phrased another way, we will accept all findings of fact . . . as long as those findings are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).  For the reasons below, the BIA's finding on each issue was supported by substantial evidence.

As to whether he expressed a political opinion, Mr. Gomes asserts that he did so when he told the port official that he was "against the bribery."  But given the sequence of events at the port, the record does not compel a finding that this was an expression of a political opinion.  See Hincapie v. Gonzalez, 494 F.3d 213, 218 (1st Cir. 2007) ("That the record *supports* a conclusion contrary to that reached by the BIA is not enough to

- 14 -

warrant upsetting the BIA's view of the matter; for that to occur, the record must *compel* the contrary conclusion." (emphasis in original)). Notably, the port official asked Mr. Gomes for a significant bribe, Mr. Gomes refused to pay, and, in doing so, told the port official both that the bribe solicited was three-fold what the container's contents were worth and that he was "against the bribery." Additionally, after Mr. Gomes refused to pay the initial amount (and after the port official told Mr. Gomes that "bad things" would happen to him if he refused to pay), the port official lowered his demand. Against this backdrop, the record does not compel a finding that Mr. Gomes expressed a political opinion to the port official. Put simply, where the statement "I'm against the bribery" is made in response to a specific solicitation——and Mr. Gomes intimated that at least part of the reason he would not pay the bribe was because it was too high when compared to the value of the goods being embargoed——the BIA was not compelled to conclude that his statement was an expression of a political opinion. That the port official continued to haggle with Mr. Gomes over price further demonstrates that Mr. Gomes' statement was not seen as a statement of political opinion but rather as indicative of an aversion to paying a particular bribe. Accordingly, the BIA's finding was "supported by reasonable, substantial, and probative evidence on the record considered as a

whole," and therefore must not be disturbed.[8]  Chhay, 540 F.3d at 5 (quoting Elias-Zacarias, 502 U.S. at 481).

For similar reasons, the BIA's holding that there was no error in the IJ's finding that Mr. Gomes failed to establish the required nexus between past or feared harm and his political opinion was also supported by substantial evidence.  As to Mr. Gomes' claim that the port official threatened him because of his asserted political opinion, the record suggests otherwise.  Specifically, in light of the events described above, it is far more likely that the port official threatened Mr. Gomes merely because he refused to pay the specific bribe being solicited (not because Mr. Gomes was, in the abstract and as a political matter, opposed to bribery).  As to Mr. Gomes' claim that the Brazilian government prosecuted him criminally because of his anti-corruption stance, it is far more likely that he was convicted because he violated Brazilian law.  In any event, even if the record supported Mr. Gomes' positions, this Court should not overturn the BIA's factual finding unless "any reasonable adjudicator would be compelled to conclude to the contrary."

---

[8] To the extent Mr. Gomes argues that his failure to pay the bribe was, itself, an expression of political opinion, we reject that argument.  Cf. Mayorga-Vidal, 675 F.3d at 18 (finding supportable the BIA's conclusion that the petitioner's refusal to join a gang, without more, was not an expression of political opinion).

Gómez-Medina, 975 F.3d at 31 (quoting 8 U.S.C. § 1252(b)(4)(B)). Here, nothing in the record compels a contrary conclusion.

C.    Mr. Gomes' Withholding of Removal Claim Fails Because His Asylum Claim Fails

Because Mr. Gomes has failed to establish his eligibility for asylum, he has necessarily failed to establish his eligibility for withholding of removal, Escobar v. Holder, 698 F.3d 36, 39 (1st Cir. 2012), and we therefore also affirm the BIA's decision denying his withholding of removal claim. See Pojoy-De León, 984 F.3d at 18; Villalta-Martinez, 882 F.3d at 26; Singh v. Mukasey, 543 F.3d 1, 7 (1st Cir. 2008); Guillaume v. Gonzales, 504 F.3d 68, 71 n.2 (1st Cir. 2007).

### III. Conclusion

The petition for review is dismissed as to Mr. Gomes' PSG claim and denied as to his other claims.